Nos. 41,406 and 41,445

FRED C. KOCH, W. L. HARTMAN and L. B. HARTMAN, His Wife; EDWIN G. BRADLEY and L. W. BRADLEY, His Wife, *Appellants*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SEDGWICK, STATE OF KANSAS; A. B. HUNGERFORD, d/b/a A. B. HUNGERFORD CONSTRUCTION COMPANY; GLEN H. THOMAS, GILBERT W. BAILEY, HARRY DUGAN, ROETZEL JOCHEMS, BERNARD LOHKAMP, PAUL C. MILLER and LESTER WILKINSON, the Duly Appointed Members of the Board of Zoning Appeals under Zoning Resolution Adopted by the Board of County Commissioners of Sedgwick County, Kansas, and Effective March 3, 1958; and SOUTHWESTERN BELL TELEPHONE COMPANY, a Corporation, *Appellees*.

(342 P. 2d 163)

Opinion filed July 10, 1959.

*Charles E. Jones*, of Wichita, argued the cause, and *Mark H. Adams, William I. Robinson, J. Ashford Manka, Clifford L. Malone, Mark H. Adams, II, John S. Seeber*, and *Oliver A. Witterman*, all of Wichita, were with him on the briefs for the appellants.

*Orval J. Kaufman,* of Wichita, argued the cause, and *Lawrence Weigand, Lawrence E. Curfman, Byron Brainerd, Charles W. Harris, J. Ruse McCarthy, Donald A. Bell, Charles C. McCarter,* all of Wichita, and *Richard C. Allen,* of Topeka, were with him on the briefs for appellee, Southwestern Bell Telephone Company.

*Ralph Gilchrist,* of Wichita, was on the briefs for appellee, the Board of County Commissioners of the County of Sedgwick, State of Kansas.

*Lyndon Gamelson,* of Wichita, was on the briefs for appellee, A. B. Hungerford, d/b/a A. B. Hungerford Construction Company.

*Thomas A. Bush,* of Wichita, was on the briefs for appellees, Glen H. Thomas, Gilbert W. Bailey, Harry Dugan, Roetzel Jochems, Bernard Lohkamp, Paul C. Miller and Lester Wilkinson, the duly appointed members of the Board of Zoning Appeals under Zoning Resolution Adopted by the Board of County Commissioners of Sedgwick County, Kansas.

The opinion of the court was delivered by

JACKSON, J.: The appellants filed suit in the district court to obtain an injunction preventing appellees Southwestern Bell Telephone Company and its contractor Hungerford from constructing a garage and service facility for Bell's service trucks and equipment as permitted by an order of the Board of Zoning Appeals granting permission for such construction. The other appellees were also made parties defendant. A temporary injunction was issued by the district court, but after a trial of the case, the court made findings of fact and conclusions of law including a general finding in favor of the defendants, dissolved the temporary injunction and entered its judgment and decree against the plaintiffs. At a later date, the court overruled plaintiffs' objections to the trial court's findings of fact and conclusions of law and overruled their motion for new trial.

The two appeals herein are due to the fact that counsel for appellants, out of an abundance of caution, filed an appeal from the final decree of the court, and then a short time later filed a second appeal from the orders overruling the objections to the court's order overruling the motion attacking the findings, conclusions, and order relating to the motion for new trial. Of course, the appeals have been consolidated, and no further attention will be given to the separate appeals.

A preliminary matter may be summarily disposed of. Appellees shortly before the case was set for oral argument filed a motion to dismiss the appeal on the ground that it had become moot, in that the building sought to be enjoined had been completed. In view

of this court's understanding of the position of appellee Southwestern Bell Telephone Company at the time of a hearing on an application for a temporary injunction pending the appeal to this court, the motion is denied.

It might be observed at the start that a survey of the cases coming before the courts involving questions of zoning seem to contain a rather high degree of feeling and a possible financial loss to one side or the other. All the courts are able to do is to endeavor to apply the rules of law which have been developed in this comparatively new field, and sometimes those rules are somewhat nebulous.

Actually it would seem that there is very little, if any, dispute as to the pertinent facts in this appeal, and the only real question of law for decision may be stated to be whether the Board of Zoning Appeals was authorized and empowered to grant an exception or variance to the zoning resolution which permitted a non-conforming use in a zoning district. Perhaps, in view of the work load of this court, we would be justified in giving a short answer to the legal question. However, the case is one of importance and we shall attempt to adequately discuss the contentions of the parties and the facts of the case. We shall refer to individuals by surnames and to groups and boards usually by abbreviated names.

This suit involves an area immediately adjacent to the present city limits of Wichita on the east. The appellants, plaintiffs below, are landowners in the area. They acquired their tracts in the early 1930s, and have invested very large amounts of money in improving them. Their properties now constitute beautiful and valuable suburban estates. A map or plat shown on page 262 will make the area clearer.

It will be seen that the map portrays four sections of land in township 27 S, Range R2E in Sedgwick County; that Bradley's estate is in the north half of section 8; that Koch owns the southwest quarter of the same section; while Hartman's property is the northeast quarter of section 18; that the Wichita Country Club is located in the northwest quarter of section 17, across Rock Road from Hartman. We are advised that the facilities and improvements of the country club cost more than one million dollars. Koch, Bradley and Hartman at their own expense paved Rock Road and also brought water to the area. Plaintiffs frankly state that it has been their intention to plat their land into an exclusive residence

addition to the city. The city limits have now reached the west boundary of the Hartman property.

This lawsuit involves the use of the southeast quarter of section 7, across Rock Road to the west from the Koch property. It will be noted that this quarter section is bounded on the north by the tracks of the Frisco railroad, which bisects sections 7 and 8 from east to west. When the plaintiffs located in the area there was

Township __27 S__          Range __R2E__          County __Sedgwick__          State __Kansas__

no zoning in force. In 1941, the KFH radio station and towers were located on twenty acres in the southeast quarter of section 7 as shown on the map. Koch and others of the plaintiffs objected to such location to no avail. In 1955, Dolese Brothers acquired the twenty acres to the north of KFH as shown on the map. Plaintiffs objected again without any real results as far as preventing the installation of the cement mixing business in this location. From the map, it will readily be seen that Wichita school board owns some one hundred acres of this southeast quarter section. Just when the school board acquired this property is not shown in the record. It would appear that in December, 1957, 140 acres out of the 160 acres in the quarter section in question were being put to some non-residential use. The balance of the acreage was apparently owned by a Mr. Calkins.

On December 10, 1957, the telephone company purchased and later received a deed for three acres of the Calkins land immediately south of the KFH property. This land is shown in black on the map. As found by the trial court upon undisputed evidence, the telephone company "purchased this property for the purpose of constructing a maintenance building wherein it would headquarter approximately thirty-five maintenance vehicles and transact such other business necessary to discharge its public utility obligations to its customers in the east portion of Wichita . . . and surrounding communities." It was further shown that the company had installed such a facility in the north, the west and the south parts of Wichita; that during the month of January, 1958, the company proceeded to work toward the construction of its building on the purchased property by having a survey made and preliminary drawings constructed.

On March 3, 1958, a county zoning resolution which applied to the area under consideration was adopted by the county commissioners under the provisions of certain amendments to the zoning statutes of the state, now found in G. S. 1957 Supp. 19-2927 to 19-2936. Acting under these statutes as supplemented by G. S. 1957 Supp. 12-716 *et seq.*, the city of Wichita and the county commissioners created the Wichita-Sedgwick County Metropolitan Planning Commission.

It will be seen from the map that some five acres on each of the four corners of the intersection of Rock Road and East 13th street were zoned for light commercial use. The rest of the area pertinent

to the present controversy was zoned "suburban residential." It will be noted further that the zoning of the five acres of the Calkins land at the corner of Rock Road and East 13th left only fifteen acres in the entire southeast quarter of section 7, zoned for suburban residential use. This would include the three acres now owned by Bell.

On May 28, 1958, the telephone company made application for a building permit to the county commissioners. Plaintiffs seem to lay considerable stress upon the precise procedure followed by the company. In our view of the case, it is unimportant just what precise route was followed. But we believe the trial court set out the pertinent facts in its finding No. 11 which reads as follows:

"11. That on or about May 28th, 1958, the defendant, Southwestern Bell Telephone Company, made application for a building permit for the construction of the maintenance building on said property—after some proceedings had on this application, the same was on the 17th day of July, 1958, denied by the Wichita-Sedgwick County Metropolitan Area Planning Commission. On July 29th, 1958, the defendant, Southwestern Bell Telephone Company, appealed the refusal of the building permit and made application for an exception to or a variation from zoning regulations to the Board of Zoning Appeals of Sedgwick County, Kansas."

However, there is no question, and the telephone company admits, that the metropolitan planning commission considered the application for a building permit as an application for a "special permit" under section 11F of the zoning resolution. Section 11F reads as follows:

"F. PUBLIC BUILDINGS AND PUBLIC UTILITIES

The Commission may, by special permit and subject to such protective restrictions as it deems necessary, permit the location in any district, of any public building erected and used by any department of the City, County, State or Federal government, or any building or other structure erected and used by any public utility."

In its findings the trial court omits an abortive hearing of the Board of Zoning Appeals under an appeal dated July 21, 1958. The original petition in this suit was filed July 26, 1958, and at a preliminary hearing, it was agreed by all parties to present a new appeal to the Board. This was done and it is to this appeal the trial court refers in its finding.

The trial court found in finding No. 12 as follows:

"12. That a hearing before the Board of Zoning Appeals of Sedgwick County, Kansas, was set for August 6, 1958, notice was given to all interested parties and a public hearing was had on said date at which hearing evidence

was heard; that after said hearing and on August 11, 1958, the Board of Zoning Appeals of Sedgwick County, Kansas, reduced its decision to writing in accordance with the regulations, which decision ordered the issuance of the building permit requested and granted an exception and/or variance to the applicant. Southwestern Bell Telephone Company, and pursuant to the resolution imposed certain protective conditions."

The rest of the findings of the court were generally against the plaintiffs and in favor of the defendants.

The basis for the creation of the Board of Zoning Appeals is found in G. S. 1957 Supp., 19-2934. The provisions of the section pertinent to this discussion read:

"Any zoning order adopted under this act shall provide for the establishment of a board of zoning appeals. . . . The county commissioners may authorize such board of zoning appeals to administer the details of the application of the zoning order and regulations in accordance with the general rules set forth in the zoning order, including the power to hear and determine appeals from the refusal of building permits and to permit exceptions to, or variations from the zoning regulations in the classes of cases or situations and in accordance with the purposes, standards, conditions and procedure specified by the county commissioners."

In accord with the above statute the zoning resolution of the county contained section 13, which reads as follows:

"BOARD OF ZONING APPEALS.

"The Board of Zoning Appeals, hereinafter called the Board, shall consist of members appointed by the Board of County Commissioners. The Board shall organize, adopt rules, hold meetings and keep records all as provided by law.

"1. Authority of the Board. The Board shall administer the details of the application of this Resolution in accordance with the general rules set forth therein. Where practical difficulties or unnecessary hardships might result from a strict and literal interpretation and enforcement of the provisions of this Resolution, the Board, upon receipt of an application in prescribed form from the owner of the property affected (which aplication shall fully state the grounds of the appeal and the facts relied upon), shall have authority to hear and determine appeals from the refusal of building permits, and to permit exceptions to and variations from the regulations in cases where it finds that the following conditions are present:

"a) The exception or variance desired arises from a condition not ordinarily found in the same zoning district;

"b) The granting of the exception or variance will not unduly and adversely affect the rights of adjacent property owners;

"c) The exception or variance desired is not against the public interest."

At the hearing of August 6, the Board of Zoning Appeals allowed a variance in favor of the telephone company and after making written findings, ordered the issuance of a building permit for

construction of the Bell facility. Plaintiffs immediately filed an amended petition in their injunction case, and a temporary injunction was issued until the matter could be tried upon its merits. At the trial as has already been indicated, the district court found the issues of fact in favor of the defendants and dissolved the temporary injunction. Plaintiffs immediately appealed to this court with adequate specifications of error to bring up for review any possible error in the proceedings of the district court.

The plaintiffs in this appeal first argue that section 11F of the zoning resolution set out above provides the exclusive procedure for the telephone company to obtain a permit for its building, and that the denial of the application by the planning commission cannot be reviewed. The defendants counter by asserting that if such paragraph of the resolution be so construed, it is unconstitutional. They point out the statutes do not specifically provide for such provision or procedure and cite *Hudson Properties, Inc. v. City of Westwood,* 181 Kan. 320, 310 P. 2d 936, which in effect held that an ordinance which gave the governing body of a city authority to grant or withhold a permit for the construction of a gasoline service station at will was unconstitutional.

Be that as it may, we think the statutes pertaining to zoning commissions are to be construed in a manner to uphold their validity and according to their plain meaning. Such commissions are given only two functions in the statutes. First they are to draw up plans for zoning, which become effective when the plans are approved by the county commissioners (G. S. 1949, 19-2904, and G. S. 1957 Supp. 19-2905 to 19-2907). This may be referred to as a quasi-legislative function of the commissions. The other function of planning commissions is found in G. S. 1957 Supp. 19-2909, and may be referred to as a strictly administrative function. By the last section, such commissions may be authorized to issue building permits either by the commission or by "its duly authorized agent."

To return to the procedure in this case, the application for a building permit by the telephone company came into the hands of the county zoning administrator, the "duly authorized agent" of the zoning board. The administrator with proper diligence forwarded it to the zoning board for consideration under section 11F of the zoning resolution. It must be apparent that section 11F is to be construed as a variance in the general zoning regulations for a public building or a building owned by a public utility. The

zoning resolution would seem to recognize that because of the public interest in such buildings the general zoning regulations as to districts should not apply to such buildings in all force and rigor. But the denial of the building permit by the zoning board would not seem to make such denial any less appealable to the Board of Zoning Appeals as provided for in G. S. 1957 Supp. 19-2934 and in section 13 of the zoning resolution. Plaintiffs cite no authority for their contention as to section 11F, and it must really be evident upon mature reflection, that the only effect of the existence of section 11F is to cast doubt upon the validity of the denial of the permit in view of the fact that the section relaxes the zoning regulations as to such buildings.

The next contention of the plaintiffs is that due to a typographical error in the resolution creating the Board of Zoning Appeals in which the resolution of the county commissioners erroneously referred to a nonexistent section 17 of the zoning resolution instead of section 13, the board was never created. It is to be noted that the error was corrected as soon as the commissioners noted the error. Plaintiffs' own citation of *Russell v. Cogswell,* 151 Kan. 793, 101 P. 2d 361, contains language answering this objection. In the Russell case it is said:

"A liberal construction of statutes in order to effectuate their purpose is the established policy of this court. The function of liberal construction is called into use where there is ambiguity in the language of the statute or, in other words, where there are one or more interpretations which may fairly be made. Where clarification is required judicial interpretation is made that will give life to the statute rather than the one which will nullify it. Errors plainly clerical in character, mere inadvertences of terminology, and other similar inaccuracies or deficiences will be disregarded or corrected where the intention of the legislature is plain and unmistakable." (p. 795.)

The trial court was correct in disregarding this objection.

The plantiffs argue most strenuously that the authority of the Board of Zoning Appeals "is limited by the spirit, intent, and purpose of the zoning resolution." In a sense, of course, this is a correct postulate. But plaintiffs would have us hold in effect that in granting an exception or variance, the board could not authorize the existence of a non-conforming use in any zoning district. The creation of boards of zoning appeals seems to be quite a general provision in the zoning statutes throughout the United States, though apparently this court has not been called upon to pass upon the powers of such boards. It is said that the boards will grant ex-

ceptions or variances based upon the equities of the particular situation, and that the existence of such boards will prevent "spot zoning." Our research in the decisions of other states would indicate that non-conforming uses are often allowed as variances by such boards. The wording of section 19-2934 and of section 13 of the resolution in this case would indicate in our opinion that such a variance might be made in a proper case.

Plaintiffs actually cite only two cases to sustain their position in this matter, *Lee v. Board of Adjustment*, 226 N. C. 107, 37 S. E. 2d 128, 168 A. L. R. 1, and *Real Properties, Inc. v. Board Appeal*, 319 Mass. 180, 65 N. E. 2d 199, 168 A. L. R. 8. A reading of these cases, both contained in the same volume of A. L. R., would hardly in our opinion bear out the full contention of the plaintiffs. The courts did speak of the spirit, intent and purpose of the zoning ordinances, but they did not go to the length contended by plaintiffs. We must also disagree with plaintiffs after reading many of the cases cited in the lengthy annotation following the above cases in 168 A. L. R., beginning on page 13. The authorities would in our opinion show that the plaintiffs are mistaken in their contention. Some of these authorities will be cited later in this opinion.

In the general discussion of the power of such boards of zoning appeals, it is said in 101 C. J. S. 1041, § 276:

"Since the literal enforcement of zoning regulations in all cases might result in serious injustice to particular individuals in isolated cases, boards of appeal or adjustment or similar bodies usually are vested with power, within prescribed limits, to grant particular property owners a right, generally termed a variance or exception, to use property *in non-conformity with the regulations,* in certain cases where hardship or practical difficulties would otherwise result, or in certain other cases where the effect of the application of the zoning ordinance or regulation, if literally enforced, would be arbitrary." (Italics supplied.)

The very definition of the terms "exception" and "variance" as they are used in statutes relating to such boards of zoning appeals is most pertinent. In 101 C. J. S. 1037, § 273, the terms are defined as follows:

" 'Exceptions' or 'special exceptions' are distinguished from 'variance' in that the latter permits the use of property in a manner forbidden by the zoning law while 'exception' relates to a use permitted by the law, and in that an exception ordinarily need not be based on a showing of hardship."

See further *Devereux Foundation, Inc., Zoning Case*, 351 Pa. 478, 41 A. 2d 744, where a prohibited variance was denied; and *St. Onge v. Concord*, 95 N. H. 306, 63 A. 2d 221.

From the above authorities and others we deem it to be now established generally that the word "variance" as used in connection with these boards of zoning appeals involves the power to allow or deny a use which does not conform to the general zoning of a particular zoning district in question.

We would at this point direct special attention to the case of *Illinois Bell Telephone Co. v. Fox*, 402 Ill. 617, 85 N. E. 2d 43, where the Supreme Court of Illinois held that a board of zoning appeals had abused its discretion in denying a building permit for a modern telephone exchange which was to be located in a residential zoning district.

It should now be pointed out that to reverse the decision of the district court in this case, it would not only be necessary to hold that the evidence before that court did not support the decision of the court, but to also hold that the Board of Zoning Appeals was unreasonable and abused its discretion (*Konitz v. Board of County Commissioners*, 180 Kan. 230, 303 P. 2d 180).

We have not lengthened this opinion by setting forth the written findings of the Board of Zoning Appeals, but as to the three conditions as set out in section 13 of the resolution and the statute, *supra*, necessary to support its findings, we would suggest the following: Bell purchased this property for a specific purpose before the zoning resolution was promulgated. Such a situation was held to sustain the granting of a variance in *Bubis v. City of Nashville*, 174 Tenn. 134, 124 S. W. 2d 238; *E. Providence Mills, Inc. v. Zoning Board*, 51 R. I. 428, 155 A. 531; and *People v. Kerner*, 211 N. Y. S. 470, 125 Misc. 526.

It may also be suggested that the board might have believed that the existence of the telephone company's building, properly controlled by the Board of Zoning Appeals as to appearance, set back, and screening with evergreens, will not add much injury to the property values of the plaintiffs either in the present condition or in event of a future residential development. In this connection, the existence of the railway, of the radio station, of the high school property, and of the adjacent five acres zoned for light commercial uses must be taken into consideration.

It must also be considered that as stated in section 13, the public interest must be considered. The public is interested in adequate telephone service. We believe the existence of section 11F of the zoning resolution was included in recognition of the public interest in the types of buildings therein mentioned and to provide that they

might be allowed in a zoning district as a legislative variance. In this connection we would again direct attention to the case of *Illinois Bell Telephone Co. v. Fox*, supra. In that case, a board of zoning appeals had denied the application of Bell for a permit to build a building for a modern telephone exchange within a residential zoning district on the specific ground that the ordinance forbad the granting of such a variance. The supreme court in reversing the board on certiorari held that the board had misconceived the regulation and found a section in the ordinance akin to section 11F herein, and in speaking of the public interest said in part:

"Finally, defendants contend plaintiff has not shown that a telephone exchange is necessary, at the proposed site, for public convenience. Because two witnesses for plaintiff testified that they investigated all properties within approximately half a mile of the wire center of the telephone district, defendants conclude that any site within the area described would be satisfactory and that it is not necessary to erect an exchange at the site finally selected. Defendants misinterpret the obvious import of the word 'necessary' appearing in the statute. A word of great flexibility, 'necessary' may mean 'absolutely necessary' or 'indispensable,' or, less restrictively, 'expedient' or 'reasonably convenient.' (citing cases) . . . There being conclusive proof that the erection of a telephone exchange was necessary, at the proposed site, for public convenience, and there being no evidence to the contrary, the board had no discretion to deny plaintiff's application. Section 24 provides that the '. . . board of appeals shall approve any special use' where the use is necessary for public convenience, and, upon the affirmative showing made by plaintiff, it became mandatory for the board to approve the application for a special use." (pp. 630-631)

See also *Dunham v. Westerly Zoning Board*, 68 R. I. 88, 26 A. 2d 614.

All other contentions of counsel herein have been fully considered, but require no comment. From what has been said, it appears that the decision of the district court in this appeal must be affirmed. It is so ordered.

WERTZ, J., not participating.

ROBB, J., dissents.