No. 47,614

Jack L. Stice, Lucretia V. Stice, J. R. Smith, Orville Sketers, Doris Sketers, Kelly Spellman, C. R. Spellman, Harley L. Shields, Sallye B. Shields, Leo Poage, Audrey Poage, J. D. Brooks, Nancy Brooks, Shirley Keal, E. V. Harris, James Vaughn, and Ellie Vaughn, *Appellants,* v. Gribben-Allen Motors, Inc., Parsons, Kansas, *Appellee.*

(534 P. 2d 1267)

Opinion filed April 5, 1975.

*Charles F. Forsyth,* of Erie, argued the cause, and *Clark M. Fleming,* also of Erie, was with him on the brief for the appellants.

*Richard C. Dearth,* of Jones and Dearth, Chartered, of Parsons, argued the cause, and *Glenn Jones,* of the same firm, was on the brief for the appellee.

The opinion of the court was delivered by

FOTH, C.: This is an action to enjoin the construction of an automobile sales and services facility in a zoned residential area on the outskirts of Parsons, brought by seventeen neighboring homeowners. The trial court held that a "variance" under which the defendant, Gribben-Allen Motors, Inc., secured a building permit and justified its proposed construction, had been validly granted by the Labette county board of zoning appeals and denied the injunction. Plaintiffs have appealed.

The primary issues on appeal are whether there was evidence to support a finding that enforcement of the zoning order would cause defendant "unnecessary hardship," and whether the variance was consistent with the "general spirit and intent" of the zoning order—both conditions precedent to the granting of a variance under K. S. A. 19-2934a.

The origins of this controversy go back to early 1970, when the city of Parsons made overtures toward zoning the area outside the city but within three miles of the city limits. After considerable public debate, in mid-March, pursuant to K. S. A. 1969 Supp. 12-715b, the city formally notified the county of its intent to act if the county didn't. The city's publicly announced concern was over the "orderly development of highway approaches" to Parsons.

Faced with a petition by around 600 rural residents urging them to do so, the county commissioners on April 16 announced their decision to zone the three-mile perimeter themselves, rather than

let the city do it. A resolution establishing the county planning commission and setting the zoning wheels in motion became effective on May 20, 1970.

On November 12, 1970, the zoning plan and regulations adopted by the county commissioners went into effect. Included in the plan was a residential area extending about nine-tenths of a mile to the west of the Parsons city limits on either side of West Main Street, which is also U. S. highway 160. Of this particular strip the development plan map notes, *"Policy:* DISCOURAGE STRIP COMMERCIAL DEVELOPMENT CONTIGUOUS TO U. S. 160."

In the meantime defendant's corporate predecessor took an option on and purchased a ten acre tract with a 380 foot frontage on U. S. 160, in about the middle of the .9 mile residential area. The purchase was consummated in June, 1970, after the county had formally determined to zone the area but before the effective date of the zoning. The purchase price was $12,000. The announced reason for the purchase was the establishment there of the car dealership at some indefinite time in the future. At the time the existing site of the business was being condemned by the Parsons urban renewal agency.

Some three years later defendant first sought authority to place its business on the tract in question. The defendant's president, Larry Allen, approached the Labette county planning commission on May 10, 1973, and was told to present a petition for rezoning. This he did, and on June 1, 1973, his petition was considered by the planning commission at a special hearing held for that purpose. Allen gave as his reason for wanting the rezoning that the urban renewal agency had just raised its price for commercial property in downtown Parsons from 27¢ per square foot to 50¢ per square foot.

The planning commission voted to deny the request, 4 to 3. The denial meant that under K. S. A. 19-2932 the county commissioners could not rezone the tract except by unanimous vote. It appears that two of the county commissioners looked on the change with favor and one did not.

In any event, sometime during the next month the county commissioners purported to appoint two additional members to the county planning board, which would have brought its membership to nine. When that body met again on July 12, 1973, Allen was back with a new rezoning petition, and two new members sought

to sit with the commission. The chairman announced that on the advice of the county attorney the two additional members would not be permitted to participate. (K. S. A. 19-2933 states that the zoning commission "shall consist of seven (7) members.") Allen at that point asked that consideration of his petition be put off for yet another month.

At the next meeting, August 8, 1973, the zoning commission again voted to disapprove the rezoning. Defendant filed a "notice of appeal" to the county commissioners, but with the outcome of their action already ascertained through an informal head count defendant took no steps to secure any decision from that body.

Instead, it pursued what it perceived as an alternate route to the same destination through securing a "variance" from the county board of zoning appeals. First, noting an apparent omission in the original resolution establishing the board of zoning appeals, its counsel presented to the county commissioners a proposed resolution conferring on the appeals board "all the powers provided for by Statute as set forth in Chapter 239, Laws of Kansas, 1951, as amended." (That act is the county zoning act under which all proceedings were had, and now appears as K. S. A. 19-2927 *et seq.*) The proffered resolution was signed by two of the county commissioners on August 22, 1973.

The next step was an application for a variance to the five man board of zoning appeals. The application was heard on October 11, 1973. The minutes of that meeting reflect none of the evidence presented except as to who spoke, and none of the findings made except those relating to the size and cost of the lot and when it was purchased. After a closed discussion by the board the members voted in open meeting, 3 to 2, to grant the variance. A building permit was issued the next day.

After the October 11 meeting opponents of the project regrouped. They discovered a potential challenge to the eligibility of one of the members of the board of zoning appeals who had voted in favor of the variance. Accordingly, the chairman (an opponent and one of the plaintiffs) called a special meeting the next week at which the challenged member was excluded and one member was absent. The board voted 2 to 1 to rescind its prior action. Although a great deal of space in the briefs is devoted to the qualifications of the challenged member and the validity of the rescission order, in the view we take of the case we need not decide those issues.

Defendant, ignoring the order rescinding its variance, went ahead with its construction plans. On February 19, 1974, the first bulldozers appeared on the tract; the same day this suit was filed, alleging among other things that the board of zoning appeals exceeded its authority in granting the variance. A temporary restraining order was issued, but after a hearing the court refused to issue a temporary injunction. A stay was issued pending this appeal.

Subsection (*b*) of K. S. A. 19-2934a gives to a county board of zoning appeals the authority to authorize a variance in specific cases where "owing to special conditions, a literal enforcement of provisions of the order will, in an individual case, result in unnecessary hardship, provided that the spirit of the ordinance or resolution shall be observed, public safety and welfare secured, and substantial justice done." The statute goes on to say:

". . . A request for a variance may be granted in such individual case, upon a finding by the board that all of the following conditions have been met: (1) That the variance requested arises from such conditions which is unique and which is not ordinarily found in the same zoning district; and is created by the zoning order and not by an action or actions of the property owner or the applicant; (2) that the granting of the permit for the variance will not adversely affect the rights of adjacent property owners or resident; (3) that the strict application of the provisions of the zoning order of which variance is requested will constitute unnecessary hardship upon the property owner represented in the application; (4) that the variance desired will not adversely affect the public health, safety, morals, order, convenience, prosperity, or general welfare; and (5) that granting the variance desired will not be opposed to the general spirit and intent of the zoning order."

The October 11 order of the board of zoning appeals had been prepared by counsel for the defendant. It was presented to and signed by the three members who favored the variance. The order recited a finding "that applicant purchased the real estate described in its request for a variance, for use as an automobile sales and service business prior to said real estate being zoned which restricted such use. That to prevent such use of said property by applicant will result in an injustice and hardship to applicant." In addition it recited five findings which followed almost verbatim the five requirements enumerated in K. S. A. 19-2934a, quoted above. The extent to which the statute was paraphrased is negligible.

The trial court's finding, insofar as the validity of that order is concerned, was that "The allowance by the Board of Zoning Appeals of the variance from the Zoning Regulations to defendant herein for

the location of its automobile sales and service business was lawful and reasonable and the Board of Zoning Appeals did not act fraudulently, arbitrarily and carpriciously in granting the variance to defendant and its order granting said variance is supported by the evidence."

It went on to say, "The court further specifically finds under the evidence and the law that the court cannot substitute its judgment for that of the Board of Zoning Appeals at its October 11, 1973, meeting."

As an abstract statement of law there can little quarrel with this latter conclusion of the trial court. It is a general principle of judicial review of administrative decisions that a court will not substitute its judgment for that of an administrative body in matters of discretion. This does not mean, however, that there is no room for the customary judicial review. A common statement of the scope of that review is that a court "is restricted to considering whether, as a matter of law: (*a*) the tribunal acted fraudulently, arbitrarily or capriciously; (*b*) the administrative order is substantially supported by evidence; and (*c*) the tribunal's action was within the scope of its authority." (*Neeley v. Board of Trustees, Policemen's & Firemen's Retirement System*, 212 Kan. 137, 510 P. 2d 160, Syl. ¶ 2, following *Lauber v. Firemen's Relief Association*, 202 Kan. 564, 451 P. 2d 488.) The same standard is enunciated in *Kansas State Board of Healing Arts v. Foote*, 200 Kan. 447, 436 P. 2d 828, Syl. ¶ 1, followed by a description of our function on appellate review:

"In reviewing a district court's judgment, as above, this court will, in the first instance, for the purpose of determining whether the district court observed the requirements and restrictions placed upon it, make the same review of the administrative tribunal's action as does the district court." (Id., Syl. ¶ 2.)

The task of this court, then, is to take the same look at the administrative action—*i. e.*, the granting of the variance—as did the trial court. We are looking to see whether the order was "substantially supported by evidence" and whether the action of the board of zoning appeals "was within the scope of its authority."

Those two issues are, in this case, interdependent. On the one hand, in determining whether the order was within the board's authority, we must determine whether there was substantial evidence to support each of the five findings required by K. S. A. 19-2934a (*b*). On the other hand, to determine whether the evidence

was sufficient, we must determine what those statutory requirements mean.

We look first to the statutory requirement (No. 3) that strict application of the zoning order will cause "unnecessary hardship" on the property owner. The board's finding that it would, insofar as the record reveals, was based on two factors. The first was that the company bought the land before the zoning went into effect with the intention of moving its business there. The second was that to establish its new location at some other site which was suitably zoned would be more expensive. (Urban renewal prices had gone from 27¢ to 50¢ per square foot for commercial property.) Counsel for the company suggests no other basis for the finding, and we can discern none.

The question then is: assuming those factors are established, do they demonstrate that the company will suffer the kind of "unnecessary hardship" contemplated by the statute if it is not permitted to put the land to its intended use? We think not.

Although we have not had prior occasion to construe our variance statute, it is of a variety commonly found in other states. A finding of "unnecessary hardship" or the equivalent is universally required, and the universal rule is that "the financial loss or the potential of financial advantage to the applicant is not the proper basis for a variance." (*Garibaldi v. Zoning Board of Appeals*, 163 Conn. 235, 239, 303 A. 2d 743.)

In *Garibaldi* the applicants' liquor store had been condemned for a new highway and they were forced to find a new location. In the area zoned for liquor stores no location was available that was not within a proscribed 1000 feet of an existing store. They bought a building anyway, and sought a variance. The board of zoning appeals granted one, finding "hardship" because of the condemnation and the unavailability of other property. An appeal by a competing liquor store owner was dismissed at the trial court level, but on appeal the Connecticut supreme court reversed. The basis for the rule quoted above—which, it was noted, is "well established"—was said to be that a variance pertains to the property, not to the owner. If the property is susceptible of productive use, the desires of a particular owner cannot be considered, for:

". . . Hardships in such instances as these do not arise from the application of zoning regulations, per se, but from zoning requirements coupled with an individual's personal needs, preferences and circumstances. Personal

hardships, regardless of how compelling or how far beyond the control of the individual applicant, do not provide sufficient grounds for the granting of a variance." (Id., 163 Conn. at 239-40.)

Similar statements, rejecting mere financial hardship to the particular landowner as a basis for a variance, may be found in the following cases, among others: *Y. W. H. Assn. v. Bd. of Standards & Appeals*, 266 N. Y. 270, 194 N. E. 751; *Anderson v. Board of App., Town of Chesapeake Beach*, 22 Md. App. 28, 322 A. 2d 220; *Homan v. Lynch, et al.*, 51 Del. 433, 147 A. 2d 650; *Bilotta v. Haverford Twp. Zon. Bd. of Adj.*, 440 Pa. 105, 270 A. 2d 619; *Real Properties, Inc. v. Board Appeal*, 319 Mass. 180, 65 N. E. 2d 199. See also, 8 McQuillin, *Municipal Corporations*, § 25.168; 2 Yokley, *Zoning Law and Practice*, § 15-12.

As to what *does* constitute such a hardship as to justify a variance, the cases say:

"The criterion of unnecessary hardship is that the use restriction, viewing the property in the setting of its environment, is so unreasonable as to constitute an arbitrary and capricious interference with the basic right of private property; or that there is convincing proof that it is impossible to use the property for a conforming purpose; or that there are factors sufficient to constitute such a hardship that would in effect deprive the owner of his property without compensation. An unnecessary hardship exists when all the relevant factors taken together convince that the plight of the location concerned is unique in that it cannot be put to a conforming use because of the limitations imposed upon the property by reason of its classification in a specific zone." (*Peterson v. Vasak*, 162 Neb. 498, 508, 76 N. W. 2d 420.)

Among other cases employing similar criteria are: *Goodman v. Zoning Bd. of Cranston*, 105 R. I. 680, 254 A. 2d 743; *Patalano v. Zoning Bd. of Ea. Prov.*, 112 R. I. 533, 312 A. 2d 580; *R-N-R Associates v. Zoning Bd. of Prov.*, 100 R. I. 7, 210 A. 2d 653; *Beerman v. Kettering*, 14 Ohio Misc. 149, 237 N. E. 2d 644; *Matter of Calcagno v. Town Board of Webster*, 265 App. Div 687, 41 N. Y. S. 2d 140; *Frank v. Russell*, 160 Neb. 354, 70 N. W. 2d 306; *Puritan-Greenfield Assn. v. Leo*, 7 Mich. App. 659, 153 N. W. 2d 162; *Deardorf v. Board of Adjustment Etc.*, 254 Iowa 380, 118 N. W. 2d 78. See also, Anno., 168 A. L. R. 13; 2 Rathkopf, *The Law of Zoning and Planning*, § 45-13.

In *Peterson v. Vasak*, supra, the land in question was an irregularly shaped triangular tract containing 13,619 square feet in a residential zone. The ordinance required 20,000 square feet for a single family dwelling and contained setback and side yard requirements which would be impossible to meet. The court observed that if

the ordinance were literally applied, "the land is rendered by the ordinance unusable, is deprived of any practical economic use, and has no value." (Id., 162 Neb. at 507.) It was just that sort of situation, the court said, that the variance procedure was designed to alleviate. The cases cited above, and many more, are in general accord. We find none to the contrary.

In the case at bar there was no evidence of any hardship of this kind if the ten acres were to be devoted to residential purposes. There was no claim that such use could not be profitably made of the land. Further, there was not even a claim that defendant could not locate its business elsewhere. The only "hardship" claimed was that another location would be more expensive. As we have seen, such a claim falls far short of being the type of hardship contemplated by the statute.

Defendant places much emphasis on the fact that its predecessor purchased the tract for business purposes before the zoning regulations became effective. We think this factor is largely irrelevant to the hardship issue. In the first place, zoning was in the wind when the option was taken, and was a future certainty when the option was exercised. When the zones were being established there was ample opportunity to ask for commercial zoning in the first instance. And, had the land been put to prompt use, under the zoning order defendant had a year from November 20, 1970, in which to apply for a nonconforming use permit.

But more fundamentally, the company's intention when it bought the land simply does not form a basis for a finding of "unnecessary hardship." The zoning order creates no hardship for this landowner any different from that imposed on others who, before the zoning, might have conceived the idea of converting their land to a commercial use at some time in the future. If this factor were determinative, every farmer who ever eyed the corner of his land on the highway as a potential gasoline station could claim that zoning would cause him "unnecessary hardship." As pointed out above, the desires of the landowner for pecuniary advantage come into play only when the regulation deprives him of any economically feasible use of his property. As we said in a slightly different context:

"Even if it were to be conceded that the highest and best use of this property is for an office building, the fact remains that if zoning determinations were to depend on this factor alone, the very purpose of zoning would be nullified and spot zoning would be the order of the day." (*Thurman v. City of Mission,* 214 Kan. 454, 455, 520 P. 2d 1277.)

It must be borne in mind that we are dealing here with an administrative determination to grant a variance, and not a legislative determination to grant a rezoning. The distinction is recognized by our statute by the limitation imposed upon the board of zoning appeals that it must find "that granting the variance desired will not be opposed to the general spirit and intent of the zoning order." (K. S. A. 19-2934a [b] [5].) Despite defendant's contention that rezoning and a variance are merely alternative sources of relief, there is a substantial difference. "It is fundamental in construing the powers and duties of a board of appeals that it is limited by its properly delegated powers and that it cannot exercise legislative functions so as by the guise of a variance to actually change the law regulating the character and use of property in specified zones. No proposition of zoning law has been better settled by the courts." (2 Yokley, *Zoning Law and Practice*, § 15-13, p. 187.)

Illustrative of the difference is *Van Deusen v. Jackson*, 35 A. D. 2d 58, 312 N. Y. S. 2d 853. There a developer had filed his subdivision plat in 1962, when the area was zoned Residence C. His thirteen lots each contained 20,000 square feet; C classification fixed the minimum at 15,000. In 1966 the town board, the legislative body, rezoned the area to Residence A, requiring a 40,000 square foot minimum. The developer redrew his map to cut the number of lots to nine, each with 25,000 square feet, and sought a variance. The board of zoning appeals granted it, and the trial court approved it as reasonable. The appellate division, however, reversed, noting:

"A zoning board of appeals cannot under the semblance of a variance exercise legislative powers [citations omitted]. The legislative body forms zoning policy in the shape of a comprehensive plan after 'reasonable consideration, among other things, as to the character of the district and its peculiar suitability for particular uses' [citation omitted]. The comprehensive plan, essentially general in scope, may cause disportionate injury to a property owner and, for the purpose of easing that injury, the board of appeals hears and determines individual applications for relief 'in harmony with . . . [the] general purpose and intent' of the ordinance [citation omitted]; and its determination to grant a variance must rest on 'practical difficulties or unnecessary hardships in the way of carrying out the strict letter of such ordinances' [citation omitted]. Thus, the statute makes plain that both the general purpose and intent of the ordinance, reflecting the policy of the legislative body, and the special case of the individual property owner, reflecting a practical difficulty or unnecessary hardship, must be considered by the board of appeals in varying the application of the ordinance.

"When the variance violates the general purpose of the ordinance, the board of appeals invades the province of the legislative body, and the grant

is invalid for want of authority [citations omitted]. More precisely, the board of appeals must make certain that the effect of a variance would not introduce such an incongruity into the ordinance that the zoning pattern would be seriously disarranged. The size of the parcel to be benefited by the variance thus becomes a significant factor." (Id., 35 A. D. 2d at 60-61. The tract there in question was 7.365 acres, compared to the 10 acres here.)

The same distinction between the administrative and legislative functions in zoning matters is recognized in, among other cases: *Josephson v. Autrey,* 96 So. 2d 784 (Fla. 1957); *Brown v. Beuc,* 384 S. W. 2d 845 (Mo. App. 1964); *State v. Kinealy,* 402 S. W. 2d 1 (Mo. App. 1966); *Farah v. Sachs,* 10 Mich. App. 198, 157 N. W. 2d 9; *In re Appeal Clements,* 2 Ohio App. 2d 201, 207 N. E. 2d 573; *State, ex rel. Humble Oil & Refining Co., v. City of Marion,* 4 Ohio App. 2d 178, 211 N. E. 2d 667.

In *Van Deusen v. Jackson,* supra, the developer also made much the same hardship claim as defendant makes here, *i. e.,* that he had made his plans and filed his plat before the more restrictive zoning went into effect. However, he failed in his proof of "hardship" in the same way defendant did here. The court disposed of his argument in this way:

". . . As was noted above, the power of a zoning board of appeals to vary the ordinance may be exerted only where the applicant demonstrates that the ordinance has created practical difficulties or unnecessary hardships. All that [the land owner] proved before the [board of zoning appeals] was that he had failed to develop his property before the time that the ordinance was amended to place it in a more highly restricted district. To put it bluntly, convenience rather than hardship to the developer was the evidence before the respondents; and that ground cannot serve as a foundation for the variance [citations omitted]. No proof was offered of economic loss growing out of a showing that reasonable return could not be expected from the property as zoned under the ordinance [citations omitted]." (P. 62.)

Defendants rely on *Koch v. Board of County Commissioners,* 185 Kan. 259, 342 P. 2d 163, in which this court upheld the granting of a variance to the Bell telephone company which permitted it to construct a garage for its service trucks in an area near Wichita zoned "surburban residential." The county zoning statute then in effect (G. S. 1957 Supp. 19-2934) provided that the county commissioners could authorize the board of zoning appeals "to permit exceptions to, or variations from, the zoning regulations in the classes of cases or situations and in accordance with the purposes, standards, conditions and procedure specified by the county commissioners." The Sedgwick county commissioners had granted

such authority by a resolution requiring three findings to justify a variance:

" '*a*) The exception or variance desired arises from a condition not ordinarily found in the same zoning district;

" '*b*) The granting of the exception or variance will not unduly and adversely affect the rights of adjacent property owners;

" '*c*) The exception or variance desired is not against the public interest.' " (P. 265.)

While this court did give weight to the fact that Bell had purchased the land before it was zoned, that was not the controlling factor. Of equal importance, there were commercial usages in areas immediately adjacent to Bell's tract, it would be set back and suitably screened, and especially, there was a "public interest" in adequate telephone service.

On the last factor, the zoning order itself contained a specific provision (section 11F) authorizing special permits for buildings owned by public agencies or a public utility. Of this section the court said, "It must be apparent that section 11F is to be construed as a variance in the general zoning regulations for a public building or a building owned by a public utility. The zoning resolution would seem to recognize that because of the public interest in such buildings the general zoning regulations as to districts should not apply to such buildings in all force and rigor." (Id., pp. 266-67.)

In *Koch* it was urged upon this court that a variance granted must be "limited by the spirit, intent, and purpose of the zoning resolution." (Id., p. 267.) Insofar as this principle might lead to the conclusion that *no* nonconforming use could be permitted, this court rejected the argument. The zoning resolution granted variance authority to the board conditioned only on its making the three specified findings.

*Koch* was decided in July, 1959. At its next regular session the legislature enacted Laws 1961, Chapter 156, containing just two substantive sections. Section 1 of that act amended what is now K. S. A. 19-2934, dealing with the composition of the county board of zoning appeals. All references to the board's powers were deleted, and instead were incorporated in section 2, which is now K. S. A. 19-2934a. As to variances, the new statute incorporates the first two requirements of the resolution considered in *Koch*, *i. e.*, the unique situation of the applicant's land and the lack of adverse effect on adjacent landowners. However, in place of the

third, rather general requirement of "public interest" relied on in *Koch,* the new statute requires three specific findings: unnecessary hardship, no adverse effect on the public welfare, and consistency with "the general spirit and intent of the zoning order." Thus the power of such a board was severely curtailed by the legislature, and a view of the board's power which had been partially rejected by this court was positively enacted into law.

Whether this enactment was a direct legislative response to *Koch* we cannot tell, but the import of the chosen language is clear: the board of zoning appeals, in administratively granting a variance, cannot intrude upon the legislative authority of the board of county commissioners to the extent that the variance would amount to a substantial departure from the established zoning. The variance must comport with the general spirit and intent of the zoning order.

In the case at bar the effect of the variance is simply to rezone as commercial a ten acre tract in the middle of a residential district. The decision to do that, under the statute, is entrusted to the county commissioners and not to the board of zoning appeals.

We therefore hold that the granting of the variance was beyond the legal authority of the board of zoning appeals for two reasons: first, there was no evidence of "unnecessary hardship" as that term is used in the statute; and second, the board could not reasonably conclude that the variance was consistent with the general spirit and intent of an order zoning it as residential. It follows that the trial court erred in recognizing the validity of the variance and the building permit issued thereunder, and in refusing to issue the injunction prayed for.

The judgment is reversed and the case is remanded with directions to enjoin the construction of the proposed facility so long as it is justified under the present variance and building permit.

APPROVED BY THE COURT.

FROMME, J., not participating.