(696 P.2d 409)
No. 56,746

THE CITY OF OLATHE, KANSAS, STEPHEN E. DINGES, and RAYMOND BOND, *Appellants,* v. THE BOARD OF ZONING APPEALS of the City of Olathe, Kansas, and C & C, INC., *Appellees.*

Opinion filed February 28, 1985.

*Steven R. Zieber,* assistant municipal counsel of the City of Olathe Legal Department, for the appellants.

*Ron Bodinson,* of Shook, Hardy & Bacon, of Overland Park, for the appellee The Board of Zoning Appeals.

Before FOTH, C.J., MEYER and BRISCOE, JJ.

BRISCOE, J.: The City of Olathe, the city planner and the city building inspector appeal a judgment of the district court upholding a decision of the Olathe Board of Zoning Appeals to grant a variance to C & C, Inc.

C & C operated a Vickers truck stop and filling station in Olathe, Kansas. The truck stop is adjacent to an elevated portion of Interstate 35. For some time, C & C has displayed its business name on two free-standing pole signs, 20 and 37 feet high.

In January, 1981, the City adopted a sign ordinance as part of its zoning regulations. The ordinance prohibited pole signs, but permitted businesses to maintain preexisting nonconforming signs. The ordinance provided that "any change in the business or tenant such as, but not limited to, name, logo, or updating of corporate symbols, shall be deemed a new sign and shall require a permit and shall conform to the provisions of this Chapter."

In March, 1981, C & C applied to the Board of Zoning Appeals for a variance that would permit the company to change its signs from "Vickers" to "Apco" without complying with the sign ordinance. The name change was not C & C's choice. Total Petroleum had acquired both Vickers and Apco, and required all Vickers dealers to operate under the Apco name or lose their franchise. The Board held public hearings on C & C's request and granted the variance on November 5, 1981.

The City, the city planner and the building inspector appealed to the district court. The court held that the City had no standing under K.S.A. 12-715 to challenge the variance. In addition, the court held that the Board's decision to grant the variance was not unreasonable.

We first address whether the City of Olathe, the city planner and the city building inspector have standing to appeal from Board decisions.

K.S.A. 12-715 governs appeals to and from the Board:

"Appeals to the board may be taken by any person aggrieved, or by any officer of the city or any governmental agency or body affected by any decision of the

officer administering the provisions of the zoning ordinance. . . . Any person, official or governmental agency dissatisfied with any order or determination of said board may bring an action in the district court of the county in which such city is located to determine the reasonableness of any such order or determination."

The Board contends that a city is not a governmental agency and that a city may appeal only *to* a board, and then only through an officer.

In *Carroll v. Kittle*, 203 Kan. 841, 847, 457 P.2d 21 (1969), the court held that municipalities are "agencies of the state for governmental purposes." Under this definition, a city is a governmental agency, and has standing to appeal, both to and from a board.

City officials also have standing to appeal from the Board. K.S.A. 12-715 provides that any "official . . . dissatisfied with any order" of a board may appeal. The planner and inspector are city officials charged with enforcement of the zoning ordinance. Under the plain language of the statute, they have standing to appeal a Board decision.

The Board argues that city officers cannot appeal from a Board decision because, under the statute, "any officer of the city" may appeal to the Board, but "any official" may appeal from a Board decision. We conclude that city officers are officials entitled to appeal from a Board decision. An official is an officer. Black's Law Dictionary 978 (5th ed. 1979). The term "any official" is broader than "any officer of the city."

The Board argues that as an agency of the city, it cannot sue or be sued as a separate entity. The Board relies on *Murphy v. City of Topeka*, 6 Kan. App. 2d 488, 491, 630 P.2d 186 (1981), in which the court held:

"*Absent authority expressly given by statute or ordinance,* an agency of a city does not have the capacity to sue or to be sued as a separate entity; the city is a necessary and indispensable party to any action filed either by or against the agency." (Emphasis added.)

The Board ignores the emphasized language. K.S.A. 12-715 expressly provides that parties dissatisfied with a Board decision "may bring an action in the district court of the county in which such city is located to determine the reasonableness of any such order or determination." The only logical defendant in an action to determine the reasonableness of a Board decision is the Board.

K.S.A. 12-715 expressly authorizes actions against a Board of Zoning Appeals.

The City contends the Board exceeded its authority by permitting a use (new pole signs) not permitted by the zoning ordinance. We conclude the Board acted within its authority.

K.S.A. 12-715 authorizes boards of zoning appeals to grant variances from zoning ordinances under certain conditions. The statute provides, however, that: *"Such variance shall not permit any use not permitted by the zoning ordinance in such district."* Emphasis added.

The very purpose of a variance is to permit a landowner " 'to establish or maintain a use which is prohibited by the zoning regulations.' " *Weeks v. City of Bonner Springs*, 213 Kan. 622, 631, 518 P.2d 427 (1974); *Koch v. Board of County Commissioners*, 185 Kan. 259, Syl. ¶ 2, 342 P.2d 163 (1959). Yet the statute authorizing variances (K.S.A. 12-715) expressly provides that a variance "shall not permit any use not permitted by the zoning ordinance  .  .  .  ." Interpreted literally, that language would prohibit all variances.

As a general rule, statutes are construed to avoid unreasonable results. *Wells v. Anderson*, 8 Kan. App. 2d 431, 433, 659 P.2d 833, *rev. denied* 233 Kan. 1093 (1983). There is a presumption that the legislature does not intend to enact useless or meaningless legislation. *In re Adoption of Baby Boy L.*, 231 Kan. 199, Syl. ¶ 7, 643 P.2d 168 (1982). If possible, the courts should adopt a construction that will give effect to the entire statute by reconciling different provisions to make them consistent, harmonious and sensible. *State ex rel. Stephan v. U.S.D. 428*, 231 Kan. 579, 584, 647 P.2d 329 (1982).

Many states distinguish "use variances" from "area variances." The terms are defined in 6 Rohan, Zoning and Land Use Controls § 43.01 (2) (1984):

"Most zoning ordinances authorize two types of variances: use variances and area variances. A use variance allows a landowner to use existing property in a manner not permitted by the ordinance and inconsistent with uses in the surrounding area. An example of a use variance is a commercial establishment, such as a nursery or garage, in a residential zone.

"An area variance (also known as a bulk, dimensional, construction or non-use variance) authorizes deviations from restrictions upon the construction and placement of buildings and other structures. Specifically, this device allows modification of area, yard, height, floor space, frontage, density, setback and

similar restrictions. An example of an area variance is where a building is constructed with floor area in excess of the limit prescribed in the ordinance."

In most states it is harder to obtain a use variance than an area variance. 6 Rohan, § 43.01 (2); 3 Anderson, American Law of Zoning §§ 18.06-18.07 (2d ed.1977). K.S.A. 12-715 forbids use variances altogether, but permits area variances.

Given the definition of an area variance, C & C sought an area variance in this case. The company applied for permission to maintain pole signs that did not conform to height, set-back and other requirements. The use of the property would remain the same. K.S.A. 12-715 permits this kind of variance.

The City also contends there was insufficient evidence to support the Board's decision to grant a variance to C & C.

K.S.A. 12-715 establishes standards for the granting of variances, and five conditions which must be satisfied:

"*A request for a variance may be granted* in such case, *upon a finding by the board that all of the following conditions have been met:* (1) That the variance requested arises from such condition which is unique to the property in question and which is not ordinarily found in the same zone or district; and is not created by an action or actions of the property owner or the applicant; (2) that the granting of the permit for the variance will not adversely affect the rights of adjacent property owners or residents; (3) that the strict application of the provisions of the zoning ordinance of which variance is requested will constitute unnecessary hardship upon the property owner represented in the application; (4) that the variance desired will not adversely affect the public health, safety, morals, order, convenience, prosperity, or general welfare; and (5) that granting the variance desired will not be opposed to the general spirit and intent of the zoning ordinance." (Emphasis added.)

The scope of review of a zoning variance, as stated in *Stice v. Gribben-Allen Motors, Inc.*, 216 Kan. 744, 749, 534 P.2d 1267 (1975), is

" 'restricted to considering whether, as a matter of law: (a) the tribunal acted fraudulently, arbitrarily or capriciously; (b) the administrative order is substantially supported by evidence; and (c) the tribunal's action was within the scope of its authority.' (*Neeley v. Board of Trustees, Policemen's & Firemen's Retirement System*, 212 Kan. 137, 510 P.2d 160, Syl. ¶ 2, following *Lauber v. Firemen's Relief Association*, 202 Kan. 564, 451 P.2d 488.)"

Our scope of review of the granting of the variance is the same as the trial court's. We examine whether the order was " 'substantially supported by evidence' " and whether the action of the board of zoning appeals " 'was within the scope of its author-

ity.' " *Stice*, 216 Kan. at 749. *Stice* indicates that these two factors flow together, for in determining whether the order was within the Board's authority we determine whether there is substantial evidence to support the findings required to grant the variance. We address in turn the five conditions enumerated in K.S.A. 12-715.

(1) A Condition Unique to the Property

There was evidence that C & C needed the pole signs because of a unique situation. C & C's truck stop is adjacent to an elevated portion of Interstate 35. Without pole signs, C & C's advertising cannot be seen from the highway. This condition affects C & C's business which depends on customers from the highway. C & C's situation is unique to only those businesses that depend on customers from the highway and are located adjacent to an elevated section.

(2) Adverse Effect on Neighbors

Although the city planning staff asserted that the variance would harm adjacent owners and residents "because the sign will distract from the appearance of the shopping center and as other store owners comply with the law, the applicant's sign will become increasingly detractive," we do not see the harm. There was no evidence that permitting a name change on a preexisting sign would have significant adverse effect on neighbors. A pole sign with "Apco" lettering is no more offensive than a pole sign with "Vickers" lettering.

(3) Unnecessary Hardship

In *Stice v. Gribben-Allen Motors, Inc.*, 216 Kan. 744, Syl.¶ 5, the court defined "unnecessary hardship":

"To constitute an unnecessary hardship justifying a variance, the use restriction, viewing the property in the setting of its environment, must be so unreasonable as to constitute an arbitrary and capricious interference with the basic right of private property; or there must be convincing proof that it is impossible to use the property for a conforming purpose; or there must be factors sufficient to constitute a hardship that would in effect deprive the owner of his property without compensation."

C & C owns an operating truck stop and filling station. The owner of C & C testified before the Board that, without signs which are visible from the highway, he would go out of business. Further, the name change on the sign was not instigated by C &

C, but was forced upon C & C as a result of a change in a national company's identification.

In *Stice,* the court reversed the county board of zoning appeals because there was no hardship shown by the owner who sought the variance. *Stice* is distinguishable from this case. There, the landowner had purchased undeveloped land, intending to construct an automobile sales and service facility. The claimed hardship was the loss of *potential* profitable use. Here, C & C will suffer the loss of an ongoing business unless the sign variance is granted. C & C's loss is real and immediate and not of its own making.

(4) Effect on Public Health, Safety & General Welfare

The planning staff asserted that the variance would be contrary to public health, safety and welfare "because the variance will undermine the Zoning Ordinance regulations concerning signs." This argument is not compelling. Any variance necessarily "undermines" the governing zoning ordinance to some extent. It is difficult to perceive how an "Apco" pole sign is any more harmful to the public than a "Vickers" pole sign.

(5) Conformity with the General Spirit and Intent of the Zoning Ordinance

All variances are contrary to the letter of the governing zoning ordinances. The issue is whether the variance is contrary to the general spirit and *intent* of the ordinance.

A board of zoning appeals cannot grant a variance that "would amount to a *substantial* departure from the established zoning." *Stice,* 216 Kan. 744, Syl. ¶ 8; emphasis added. The variance in *Stice* was substantial. It permitted an auto sales and service business in the middle of a residential district. Here, the variance is not substantial. The "Vickers" pole signs were permitted as a preexisting nonconforming use. The variance simply permitted C & C to change the name on the signs.

There was substantial evidence to support the Board's decision to grant the variance.

Given our resolution of the case on the merits, we need not address whether the trial court improperly raised the issue of the City's acquiescence in a prior variance case, and whether acquiescence bars review of this variance.

Affirmed.