[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff Bernard Cope appeals a decision of the defendant Zoning Board of Appeals (ZBA) of the Town of Enfield which granted the Town's application for a variance concerning the plaintiff's property. The ZBA acted pursuant to General Statutes 8-6 and 48-24. The appeal is brought pursuant to General Statutes 8-8. This court finds in favor of the defendant ZBA.
The essential facts are reflected in the record and are undisputed. The plaintiff owns property bordered by Washington Road and Elm Street in Enfield, which is in an industrial district under the zoning ordinance and on which he conducts a permitted industrial use. Washington Road and Elm Street also abut, on their other sides, property which is in a residential district. Section 12-1.2 of the zoning ordinance requires that under these circumstances there must be a fifty foot buffer strip between the industrial use, in this case two buildings, and the right of way. Prior to the events in question here, the Town determined that safety considerations indicated that Washington Road and Elm Street should be widened. This expansion of the town's rights of way would necessitate taking at least part of the plaintiff's property; that is, it would encroach on and reduce the space allotted as a buffer strip to thirty-eight feet on Washington Road and sixteen feet on Elm Street. Such a taking by the Town would render the plaintiff's property nonconforming under section12-1.2 of the ordinance.
In other respects, the plaintiff's property would continue to conform to the ordinance. In particular, section 12.5 provides that the "Minimum Area" of a lot in an industrial district is 40,000 square feet. The amount subject to the taking in this case is approximately 0.275 of an acre. CT Page 10741 It is undisputed that this taking would leave the plaintiff's lot still well in excess of that "Minimum Area." The plaintiff's use of the property for industrial purposes would also not be affected by the taking.
In April 1992, the Town applied to the ZBA for a variance of section 12.1-2 of the zoning ordinance with respect to the plaintiff's property. The requested variance would permit the reduction in the buffer strips on the plaintiff's property to accommodate the boundaries of the widened rights of way. The Town did not seek the plaintiff's cooperation or consent to this application. In fact, the plaintiff claims that he has consistently objected to the granting of the variance.
The Town applied for the variance in reliance on General Statutes 48-24. That statute reads as follows:
 A condemning authority, if acquiring less than the total amount of a single unit of contiguous property, shall, if the remaining portion of such property does not conform to the area requirements of existing zoning regulations, obtain a zoning variance for such remaining portion of property from the local zoning board of appeals before condemning any portion of such property. If such variance is not obtained prior to the taking by the condemning authority, the owner or owners of such single unit of contiguous property shall be reimbursed for the total amount of such unit and the condemning authority shall take title in fee simple to the entire unit of contiguous property.
Following a hearing, the ZBA approved the Town's application for the variance based on the opinion of its attorney. That opinion was that 48-24 and the supreme court's decision in Smith v. Zoning Board of Appeals,174 Conn. 323 (1978), granted the Town standing to apply for the variance without the consent of the owner of the property. The Town then exercised its power of condemnation over the portion of the property needed for the expanded rights of way.
It is undisputed that the plaintiff is the owner of CT Page 10742 the remaining property. Accordingly, the court finds that he is aggrieved by the ZBA's decision. Winchester Woods Associates v. Planning Zoning Commission, 219 Conn. 303
(1991).
The plaintiff does not contest the approval of the variance on the usual grounds relating to lack of hardship or violation of the comprehensive zoning plan. Rather, the sole basis of his appeal is his contention that General Statutes48-24 does not apply in this case and, therefore, the Town, which did not own the property, did not have standing to apply for the variance in the first place. In this regard, he points out that the size of the remaining property will continue to exceed the minimum lot size for the industrial district even after the Town's taking. Therefore, he argues, this is not a case where "the remaining portion of such property does not conform to the area requirements of existing zoning regulations," which is the condition precedent to the statute's applicability. The proper interpretation of the statutory phrase, "area requirements of existing zoning regulations," raises the dispositive issue in this case. It is a question of first impression. Counsel for both parties have presented exceptionally well prepared briefs and oral arguments.
The plaintiff urges the court to adopt a narrow view of the applicability of 48-24 of the statutes by interpreting "area requirements" to mean the minimum lot size provisions of the zoning ordinance. Thus, he focuses on section 12-5 of the ordinance, which is entitled "Required Lot Areas, Width, Yards, Coverage, Height" (emphasis added) and which reads, in part, "no lot shall have an area or width less than indicated in the table below" (emphasis added). As previously indicated, the table refers to the minimum size of an industrial lot as the "Minimum Area." In that same table, the limitations for front, side and rear yards are separately listed. The plaintiff also points to section 1-34 of the zoning ordinance, which provides that the formula for determining the "required lot area" is width times depth, where depth may not be greater than three times width. All of these provisions in the Town's zoning ordinance, the plaintiff argues, show that the phrase in the statute, "area requirements," has a specific, narrow meaning in the context of the ordinance, which is related only to minimum lot size requirements. Since, in this case, the portion of the CT Page 10743 plaintiff's property which will remain after the Town's taking will continue to conform to the applicable minimum lot size requirement, the plaintiff argues that the provisions of the statute never come into play.
When first confronted, the plaintiff's argument is compelling. Closer analysis, however, leads the court to reject it in favor of a more expansive reading of the statute.
As has been noted, the plaintiff's argument is based almost entirely on the use of the word "area" in the ordinance. However, even there the term is not consistently used to refer to the size of a lot. In particular, in section12-1.2, which is the only provision in the ordinance to which the variance was directed in this case, the buffer strips are referred to, almost casually, as "areas." This use of the term at least indicates that it is not inflexibly confined to its technical width-times-depth usage in the provisions cited by the plaintiff.
The plaintiff also argues, although with considerably less vigor, that Connecticut case law supports his contention that the term "area requirements," as used in connection with variances in 48-24, does not include side yard or buffer requirements, citing Chapman v. Zoning Board of Appeals, 23 Conn. App. 441, 442 (1990). That case hardly supports his argument, however. The case does not involve48-24. Furthermore, in its decision, the court describes the application in question as for "a variance from zoning regulations governing minimum lot area, side yard area, and rear yard area . . . ." and, again, as for a variance from "minimum area regulations." Although the applicant requested variances from the different regulations separately, the court referred to them all as area variances. The plaintiff makes a similar argument based on the decision in Booe v. Zoning Board of Appeals, 151 Conn. 681 (1964), cited in the defendant ZBA's brief. In that case, the property owner was "seeking a variance from the five-acre requirement of the zoning ordinance . . . He also sought a variance as to side- and front-yard requirements . . . ." Id. 683. Such a description by the court of the applicant's petition in that case, however, is obviously not authority for the plaintiff's argument in this case that a yard variance is legally distinguishable from an area variance in the context of General Statutes 48-24. CT Page 10744
The plaintiff's primary focus on the usage of the term "area" in the Enfield zoning ordinance reveals the limitations of his argument. In essence, he seeks to define the statutory terminology by reference only to the language of the ordinance. There is, however, no basis in the law for confining the applicability of the statute in this manner. Furthermore, the plaintiff's approach overlooks the common usage of the language in question in the law of zoning, in particular the law concerning variances. Zoning law recognizes a distinction between two general types of variances, use variances and area variances. "An `area' variance is one which does not involve a use prohibited by the zoning ordinance. Area variances involve matters such as setback lines, frontage requirements, height limitations, lot-size restrictions, density regulations, offstreet parking, and yard requirements." Anderson, American Law of Zoning (2d ed) 20.07. See also, to the same effect, Rathkopf, The Law of Planning and Zoning, 38.01, 38.04; and Tondro, Connecticut Land Use Regulation (2d ed. 1992) 3.D.1. See also General Statutes 8-6, which implicitly recognizes the distinction between use variances and area variances. Tondro, supra. Although Professor Tondro notes that the distinction often becomes blurred in the context of particular factual settings, decisions in other jurisdictions are helpful with regard to the facts of this case. Thus, in City of Olathe v. Board of Zoning Appeals, 10 Kan. App.2d 218, 696 P.2d 409
(1985); the court held that the board could grant an area variance to permit the applicant to erect business signs that would otherwise violate set back provisions of the zoning ordinance. The distinction was critical because the Kansas statute prohibited use variances. The court based its decision, in part, on the fact that "(t)he use of the property would remain the same." In language particularly pertinent to the facts before this court, the court in Olathe noted "(a)n `area variance' . . . authorizes deviations from restrictions upon the construction and placement of buildings and other structures." Id. (Emphasis added).
In pressing their arguments, both parties in this case cite the familiar rule of statutory construction that the legislature is presumed to have general knowledge of the state of the law in which it is legislating. State v. Dabkowski,199 Conn. 193, 201 (1986). This rule supports the interpretation of the phrase, "area requirements of existing zoning regulations" to encompass a broad range of requirements CT Page 10745 not involving regulated uses of the property. In particular, basic zoning law would include within the scope of such statutory language those zoning regulations involving setback lines and frontage and yard requirements, as well as minimum lot size requirements. With respect to the case now before this court, the law would also include buffer strip requirements such as those contained in the Enfield ordinance. Since that language would be interpreted to include buffer strip requirements under generally accepted principles of zoning law, the legislature may be presumed to have intended that interpretation when it chose to use that language in the statute. State v. Dabkowski, supra.
Consideration of the purpose of the statute also supports an interpretation more expansive than that urged by the plaintiff. One evident purpose is to provide relief from the "uncommon hardship" that the property owner would suffer when condemnation of a portion of his or her property would render the remaining portion nonconforming under the zoning regulations. Smith v. Zoning Board of Appeals, supra, 328. Although the Smith case involved only minimum lot size requirements, the hardship would be no less real if it were occasioned by a resulting nonconformity under other "area" provisions of the zoning regulations. The other side of the coin is that the statute provides relief to the condemning authority from the higher damages it would have to pay if it were obligated either to take the entire property or to compensate the owner for the diminishment in the value of the remainder as a result of its nonconformity. It would make no sense for the legislature to provide such needed relief from minimum lot size requirements but deny such relief from other non-use, area requirements. "A statute, even one which has been held to be subject to strict construction . . . must be read with common sense, so as to accomplish a reasonable result and not to thwart its purpose." State v. Ralston,7 Conn. App. 660, 682 (1986).
For all of the above reasons, this court holds that General Statutes 48-24 applies to such non-use provisions of zoning regulations as setback, frontage, and yard size requirements, in addition to minimum lot size requirements. In the context of this case, the statute applies to section12-1.2 of the Enfield zoning ordinance, which imposes buffer strip requirements. It is undisputed that the Town followed the procedures prescribed by that statute and by chapter 124 CT Page 10746 of the statutes in obtaining the variance. The plaintiff advances no other basis for his appeal. The defendant ZBA's decision is, therefore, affirmed.
The appeal is dismissed.
MALONEY, J.