(966 P.2d 675)
No. 79,116

BOARD OF COUNTY COMMISSIONERS OF SEDGWICK COUNTY, KANSAS, *Appellee*, v. DEE WINTER, *Appellant*.

—

Opinion filed July 24, 1998.

*Peter John Orsi II*, of Wichita, for the appellant.

*Clarence D. Holeman*, assistant county counselor, for the appellee.

Before PIERRON, P.J., RULON, J., and WILLIAM F. LYLE, JR., District Judge, assigned.

PIERRON, J.: Dee Winter appeals her convictions of seven counts of cruelty to animals pursuant to Sedgwick County Code § 5-191(a)(3). Winter argues there was insufficient evidence to support her convictions. She also argues the use of the word "and" in Sedgwick County Code § 5-191(a)(3) requires proof of failure to provide food, potable water, protection from the elements, opportunity for exercise and other needed care in order for someone to be convicted of cruelty to animals.

Due to the nature of this appeal, we will set out the underlying facts in detail.

On August 22, 1996, Sherdeill Breathett, Director of the Sedgwick County Animal Control, inspected a dog kennel operated by Winter. Breathett found 7 dogs housed in outdoor dog pens and

17 dogs living inside Winter's house. Winter was not present during the inspection and the dogs were in the care of Winter's mother. Breathett's inspection lasted approximately 45 minutes, of which approximately 10 minutes were captured on videotape.

Breathett testified the drinking water in the outdoor dog pens was not clean. This conclusion was based on the color of the water and bugs in the water thought to be maggots. Breathett concluded the water was not drinkable for the dogs. He also testified the pens were unclean and had fecal matter built up inside. He indicated there was high grass surrounding the dog pens and no pathway to the pens. He stated that if the animals were being given proper care, there would be a pathway due to the traffic.

Based on the condition of the water in the drinking bowls, the fecal matter in the pens, and the high grass surrounding the pens, Breathett opined that Winter did not make proper provisions for the care of the dogs. Winter was charged with 24 counts of cruelty to animals, 15 counts of failure to show a dog license, and 15 counts of failure to show a dog vaccination certificate or veterinarian's confirmation. Winter was convicted of 20 counts of cruelty to animals and all the other charges. She only appealed the convictions for cruelty to animals to the district court.

The district court held a trial de novo. Breathett testified about his inspection of the kennel and the videotape. Winter testified she had raised and shown dogs for 20 years. She has also held various positions in the South Central Kansas Kennel Club.

Winter testified that in August 1996, there had been unusually heavy rain and she had trouble keeping the grass mowed around the outdoor pens. She said it was very muddy, the grass grew extremely fast, and she had trouble with her lawn mower. Winter stated she normally cleans the outdoor kennels three times a week and during those times, the dogs are allowed to run loose in her fenced-in back yard. She said she had not cleaned the pens before the inspection because the rain and humidity had given her an asthma attack.

Winter said she normally gives the dogs fresh water every day. But, again because of the rains and her health problems, she was unable to water the dogs every day. However, she claimed she

checked to make sure that all of the dogs had water. Winter said the only problem she has had with insects in the drinking bowls has been with mosquito larvae, never maggots.

Joyce Reed testified she breeds and sells dogs and had known Winter for 15 years. She testified that during summer, she also had problems with grass and mosquito larvae getting into the dogs' drinking water. Patty Sthole testified she had known Winter for 5 years and had purchased a crate-trained puppy from her. Sthole said the dog showed no signs of mistreatment.

Dr. Reed Harrison, a veterinarian, testified that Winter had been his client for several years. Harrison had previously reviewed the videotape of Breathett's inspection and concluded there was no evidence the dogs had been abandoned, neglected, or not provided food, water, and adequate shelter. Harrison testified that the insects in the drinking water were probably mosquito larvae and that the water had been there for 24 - 48 hours. He stated that mosquitos can carry heartworms to dogs; however, the mosquito larvae do not present an immediate threat. He opined that all the conditions relied on by Breathett did not indicate that the dogs had been neglected or not properly cared for.

The district court upheld Winter's convictions for seven counts of cruelty to animals for the seven dogs in the outside pens. The court found the dogs did not have potable water and did not have adequate opportunity for exercise. The court stated the water was under no circumstances adequate for the dogs to drink.

Winter argues there was insufficient evidence to support her convictions for cruelty to animals.

When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Claiborne*, 262 Kan. 416, Syl. ¶ 5, 940 P.2d 27 (1997).

Winter contends there was no expert testimony presented at trial that established the water in the dogs' drinking dishes was not suitable for drinking. There were no scientific tests conducted, and the only evidence was the visual observations of Breathett. Winter

argues she presented expert testimony from a veterinarian that the bugs in the water were mosquito larvae which presented no immediate threat. She also contends there was no evidence the dogs were dehydrated or denied water. Winter claims the law requires the county to present proof that the drinking water was not potable, rather than merely offering evidence of an inspection by a county animal control official.

Winter also contends there was no evidence the dogs in the outside pens did not have adequate exercise. She cites the veterinarian's testimony that it is not harmful for the dogs to remain in kennels for 3 continuous days. Winter claims the county's charge of inadequate exercise only applied to the dogs in the inside pens.

Sedgwick County Code § 5-191(a)(3) defines cruelty to animals in the following manner: "Having physical custody of any animal and failing to provide such food, potable water, protection from the elements, opportunity for exercise and other care as is needed for the health or well-being of such kind of animal."

The district court weighed the testimony of Breathett and Harrison. The court gave greater weight to Breathett's testimony because he did the inspection and he observed the conditions in person. Winter would have us reweigh this testimony and side with Harrison that the evidence did not indicate the dogs had been neglected. We are prohibited from doing so.

"An appellate court does not reweigh the testimony or pass on the credibility of witnesses but accepts as true the evidence and all inferences to be drawn therefrom to support the findings of the trial court and disregards any conflicting evidence or other inferences that might be drawn therefrom." *State v. Orr*, 262 Kan. 312, Syl. ¶ 5, 940 P.2d 42 (1997).

There is sufficient evidence to support Winter's convictions. The evidence established that the dogs' drinking water was unclean and discolored, and one bowl contained some form of insect or parasite. The pens had not been cleaned for quite some time and the grass around the pens indicated that no one had regularly checked on the dogs. As the State points out, Winter's testimony also supports her convictions in that she admits that due to rainy conditions and poor health, she had been unable to clean the kennels, water the dogs, or mow the grass.

Last, Winter argues that in order to be convicted of cruelty to animals under Sedgwick County Code § 5-191(a)(3), it is necessary to prove all the items listed in the statutes. The district court held to the contrary.

"Interpretation of a statute is a question of law, and our review is unlimited." *In re Tax Appeal of Boeing Co.*, 261 Kan. 508, Syl. ¶ 1, 930 P.2d 1366 (1997).

Again, Sedgwick County Code § 5-191(a)(3) defines cruelty to animals in the following manner: "Having physical custody of any animal and failing to provide such food, potable water, protection from the elements, opportunity for exercise *and* other care as is needed for the health or well-being of such kind of animal." (Emphasis added.)

Through a simple application of the dictionary definition of the words "and" and "or," Winter argues the State is required to prove all the items listed in Sedgwick County Code § 5-191(a)(3).

Winter relies on several principles of statutory interpretation to support her argument that the "and" in Sedgwick County Code § 5-191(a)(3) is used in a conjunctive manner. First, when interpreting a statute, we must give effect to its plain and unambiguous language, without determining what, in our view, the law should be. See *State v. Reed*, 23 Kan. App. 2d 661, 663, 934 P.2d 157, *rev. denied* 262 Kan. 968 (1997). Second, it is the function of the court to interpret a statute to give it the effect intended by the legislature. See *In re Application of Zivanovic*, 261 Kan. 191 Syl. ¶ 1, 929 P.2d 1377 (1966). Last, penal statutes must be strictly construed in favor of the accused. See *State v. Cole*, 238 Kan. 370, Syl. ¶ 2, 710 P.2d 25 (1985).

We are not persuaded by Winter's argument. Her application of Sedgwick County Code § 5-191(a)(3) would lead to unreasonable or absurd results such as individuals avoiding prosecutions by providing an animal with water, protection, and exercise, but withholding food. "As a general rule, statutes are construed to avoid unreasonable results. [Citations omitted.] There is a presumption that the legislature does not intend to enact useless or meaningless legislation. [Citation omitted.]" *City of Olathe v. Board of Zoning*

*Appeals*, 10 Kan. App. 2d 218, 221, 696 P.2d 409 (1985); see *State v. Le*, 260 Kan. 845, Syl. ¶ 4, 926 P.2d 638 (1996).

Furthermore, the rule that a criminal statute must be strictly construed in favor of the accused is subordinate to the rule that "judicial interpretation must be reasonable and sensible to effect legislative design and intent." *State v. Taylor*, 262 Kan. 471, Syl. ¶ 5, 939 P.2d 904 (1997). Consequently, Winter's interpretation of Sedgwick County Code § 5-191(a)(3) is rejected.

Affirmed.