No. 60,637

THE CITY OF MERRIAM, KANSAS, a Municipal Corporation, and EXECUTIVE AFFILIATES, INC., a Corporation, *Appellees*, v. BOARD OF ZONING APPEALS OF THE CITY OF MERRIAM, KANSAS, *Appellant*, v. METROPLEX BUSINESS COMMUNICATIONS GROUP, LTD. *Intervenor/Appellant.*

(748 P.2d 883)

Opinion filed January 15, 1988.

*Lewis A. Heaven, Jr.*, of Holbrook, Ellis and Heaven, P.A., of Merriam, argued the cause and was on the brief for appellee, The City of Merriam, Kansas.

*Thomas L. Thurston*, of Perry and Hamil, of Overland Park, argued the cause and was on the brief for appellee, Executive Affiliates, Inc.

*Edward M. Boyle*, of Payne & Jones, Chartered, of Overland Park, argued the

cause and was on the briefs for appellant, Board of Zoning Appeals of the City of Merriam, Kansas.

*June Clark,* of Niewald, Waldeck, Norris & Brown, of Overland Park, argued the cause, and *Michael G. Norris* and *Michael Y. McCormick,* of the same firm, were with her on the brief for intervenor-appellant, Metroplex Business Communications Group, Ltd.

The opinion of the court was delivered by

LOCKETT, J.: This is an appeal from an order of the district court of Johnson County, Kansas, reversing the grant by the Board of Zoning Appeals of the City of Merriam, Kansas, of an area variance from the 75-foot height limitation of the Merriam zoning regulations which allowed Metroplex Business Communications Group, Ltd., (Metroplex) to construct a 990-foot communications tower. The Zoning Regulations of the City of Merriam, Kansas, 1985 ed., Art. 10, § 505(A) parallel and are limited by the requirements and standards of K.S.A. 12-715. The district judge found that the Board's decision to grant the variance was unreasonable because the regulations' requirements of "uniqueness" and "unnecessary hardship" were not met and, in addition, that by increasing the allowable height from 75 feet to 990 feet the Board's substantial departure from the zoning restrictions violated the spirit and intent of the regulations. Metroplex appealed, claiming the requirements of K.S.A. 12-715 necessary to obtain an *area* variance are more flexible than those applicable to a *use* variance because an area variance does not affect the use of the land, is less drastic in effect, and does not pose the threat of an incompatible use in the neighborhood. This appeal was transferred from the Court of Appeals to this court pursuant to K.S.A. 20-3018(c). We do not agree with Metroplex's claim. K.S.A. 12-715 provides: "Such variance shall not permit any *use* not permitted by the zoning ordinance in such district." (Emphasis supplied.) Therefore, the conditions set forth in the statute and the city ordinance for granting a variance apply only to an *area* variance and not to a *use* variance.

*Metroplex Business Communications Group, Ltd.,* is a Kansas corporation. Executive Affiliates, Inc., is an Illinois corporation operating the Georgetown Apartments in the City of Merriam, Kansas. The Board of Zoning Appeals of the City of Merriam, Kansas (Board) created pursuant to K.S.A. 12-714 *et seq.,* acts as a quasi-judicial board for the City of Merriam.

Metroplex provides sales, service, and installation of two-way radio systems; a 24-hour answering service; local and nationwide paging; cellular telephones; 800-megahertz trunking radios; and telephone business systems for offices.

Metroplex's present 300-foot tower is located in Kansas City, Missouri. Construction of new tall buildings in downtown Kansas City, Missouri, interferes with Metroplex's ability to transmit. To meet the present Federal Communications Commission (FCC) requirements, a 990-foot tower is required.

In October of 1985, Metroplex entered into a contract to purchase the property at issue. Metroplex planned to build a $3,000,000 three-story building and a 990-foot tower on the property zoned I-1, Light Industrial. The zoning regulation in effect at that time had no height restrictions.

On January 6, 1986, Article 3, Section 105A was adopted and is the present applicable Merriam zoning regulation. Article 4, § 301A(99) of the city zoning regulations permits use of property zoned I-1, Light Industrial, as a relay station (radio, television, etc.) and is the only zoning in the city which allows use of property as a relay station without variance. Section 301(d) of the zoning regulations specifies that the maximum structure height in an I-1 zoning district is limited to 75 feet.

On July 21, 1986, Metroplex filed its application with the Board requesting a variance of the bulk regulations on the property to allow the construction of a 990-foot communications tower. On August 13, 1986, the Board considered Metroplex's application. After presentation of evidence and discussion, the Board recognized that only property in the City zoned I-1, Light Industrial, was suitable for Metroplex's tower construction. The Board believed, based on its experience, that the height restriction was added to the regulation because of the City's concern for the safety of persons in structures of 75 feet or taller due to the limitations of the City's available fire equipment. The Board granted the variance to Metroplex for its tower subject to certain requirements.

Following the granting of the variance, on August 15, 1986, Metroplex renewed a contract to purchase the property for $326,700, with closing to be on or before November 30, 1986. On

September 9, 1986, pursuant to K.S.A. 12-712, the City filed with the district court its petition to review the Board's decision to grant the variance to Metroplex. Executive Affiliates later joined in the appeal. On November 25, 1986, Metroplex obtained title to and became the owner of the property. On February 26, 1987, Judge Janice D. Russell, District Court of Johnson County, reversed the decision of the Board concluding that the decision was unreasonable because three of the five dual requirements of K.S.A. 12-715 and Article 10, § 505(A), of the zoning regulations—"uniqueness," "unnecessary hardship upon the property owner," and "granting the variance desired will not be opposed to the general spirit and intent of [the] regulations"—were not met. The judge made no specific findings regarding the other two requirements, namely that the grant of the variance would not adversely affect the rights of adjacent property owners nor adversely affect the public health, safety, morals, order, convenience, prosperity, or general welfare. The Board and Metroplex appealed.

In Kansas, cities have no inherent power to enact zoning laws. The power of the city to zone exists only when the power is granted by the State. Any city in this state which enacts zoning ordinances is required to create a board of zoning appeals. K.S.A. 12-714. The board has the power to hear and decide appeals of decisions made by an administrative official in the enforcement of the zoning ordinances and, when necessary, grant variances and exceptions to the zoning ordinances. K.S.A. 12-715 sets out the requirements under which the board may grant a variance and the scope of review when an action is filed in the district court challenging the reasonableness of any order or determination of the board.

As noted earlier, the Zoning Regulations of the City of Merriam, Kansas, 1985 ed., Art. 10, § 505(A) parallel and are limited by the requirements and standards of K.S.A. 12-715. The applicable Merriam regulations provide:

"A. The Board of Zoning Appeals shall not grant a variance as authorized in Section 10-504 hereof unless it shall, in each case, make specific written findings of fact directly based upon the particular evidence presented that meets all five of the following standards:

1. The variance requested arises from such condition which is unique and unusual to the property in question and which is not ordinarily found in the same zoning district and is not created by an action or actions of the property owner or the applicant:
2. the granting of the variance will not adversely affect the rights of adjacent property owners or residents;
3. the strict application of the provision of these regulations from which a variance is requested will constitute unnecessary hardship upon the property owner represented in the application;
4. the variance desired will not adversely affect the public health, safety, morals, order, convenience, aesthetics, environment, prosperity or general welfare; and
5. granting the variance desired will not be opposed to the general spirit and intent of these Regulations."

Section 505(B) of the zoning regulations provides further:

"B. In determining whether the evidence supports the conclusions required by Section 10-505(A), the Board of Zoning Appeals shall consider the extent to which the evidence demonstrates that:

1. The particular physical surroundings, shape or topographical condition of the specific property involved will result in a particular difficulty or unnecessary hardship upon or for the owner, lessee or occupant, as distinguished from a mere inconvenience, if the provisions of these Regulations were literally enforced.
2. The request for a variance is not based exclusively upon a desire of the owner, lessee, occupant or applicant to make more money out of the property.
3. The granting of the variance will not be materially detrimental or injurious to other property or improvements in the neighborhood in which the subject property is located.
4. The proposed variance will not impair the aesthetics nor reduce an adequate supply of light or air to adjacent property, substantially increase the congestion in the public streets, increase the danger of fire, noise, endanger the public safety, storm water danger, substantially diminish or impair property values within the neighborhood."

When determining the reasonableness of board actions in granting a zoning variance, the district court is restricted to considering whether, as a matter of law, (a) the tribunal acted fraudulently, arbitrarily, or capriciously; (b) the administrative order is substantially supported by the evidence; and (c) the tribunal's action was within the scope of its authority. *Stice v. Gribben-Allen Motors, Inc.*, 216 Kan. 744, 749, 534 P.2d 1267 (1975); *City of Olathe v. Board of Zoning Appeals*, 10 Kan. App. 2d 218, 222, 696 P.2d 409 (1985). Here, Judge Russell determined that the Board had acted outside the scope of its authority when granting the variance.

State statutes which authorize cities to enact zoning ordinances include the right to provide for restrictions, *e.g.*, height, as an exercise of the police power. A height restriction does not involve a change of use, but places a limitation on the use of the property. Such limitation must be based upon considerations sufficient to justify the exercise of the police power and may be circumvented when authority is given to obtain a variance or an exception.

A variance in the law of zoning has been defined as an authorization for the construction or maintenance of a building or structure, or for the establishment or maintenance of a use of the land, prohibited by the original zoning enactment. 82 Am. Jur. 2d, Zoning and Planning § 255, p. 790. Variances are divided into two categories: use variances and area variances. A "use variance" is one which permits a use of land other than that prescribed by the zoning regulations and inconsistent with uses in the surrounding area. An "area variance" has no relation to change of use, but rather typically involves a variance from structural or lot area restrictions. Specifically, an area variance allows modification of area, yard, height, floor space, frontage, density, setback, and similar restrictions. *City of Olathe v. Board of Zoning Appeals*, 10 Kan. App. 2d 218, Syl. ¶¶ 3, 4.

Here, the variance requested by Metroplex to exceed the height restriction of the ordinance was clearly an area variance. Such variance would not have introduced a new use into the zoned district, but rather would have allowed an exception to the applicable height restriction for an allowable structure in the zone. Appellants do not deny that the City had the right to place a height restriction in the zoning regulation, but claim the requirements of K.S.A. 12-715 necessary to obtain an *area* variance are more flexible than those applicable to a *use* variance because an area variance does not affect the use of the land, is less drastic in effect, and does not pose the threat of an incompatible use in the neighborhood. See 82 Am. Jur. 2d, Zoning and Planning § 278, p. 822.

We do not agree with the appellants' claim. A board of zoning appeals may grant or deny a variance only on the basis of the authority which has been specifically delegated to it by the

zoning regulation, and the board is also subject to the limitations imposed by statute. K.S.A. 12-715(b) specifically authorizes a city to provide boards of zoning appeals with broader power to grant exceptions to the zoning ordinance where the *use* or exception is specifically listed as an exception in the zoning ordinance. Here, the City did not give to the Board the authority to spot zone or to grant a special use permit or an exception to the zoning regulation. Therefore, the Board was limited to granting area variances from the zoning regulations of the City, as provided for in K.S.A. 12-715. The statute provides: "Such variance shall not permit any *use* not permitted by the zoning ordinance in such district." (Emphasis supplied.) Therefore, the conditions set forth in K.S.A. 12-715(a) and the city ordinance for granting a variance apply to an *area* variance, and not to a *use* variance.

We next must review the district court's finding that the Board's decision to grant the variance did not meet three of the required conditions of K.S.A. 12-715(a) and the zoning regulations of the City of Merriam.

## Uniqueness

The zoning regulations allow the issuance of a variance when the conditions of the property are unique and unusual, not ordinarily found in the same zoning district, and not created by actions of the property owner or the applicant.

Metroplex contends that it presented sufficient evidence to the Board that the property was unique and unusual. Metroplex claimed that the size and location of the land made it highly suitable for the use intended by Metroplex. The president of Metroplex testified that, since monitoring and safety were primary concerns of the Board, it was necessary to locate the tower on the same piece of property as the new office building. Metroplex further stated that the depth and rectangular shape of the property, as well as the fact that the property sloped from front to rear, would allow the tower to be built behind the building at the rear of the property. This would improve the aesthetic appearance, allow proper monitoring and maintenance of the tower, and would not endanger the public safety.

In determining that the requirement of uniqueness was not met, the district court found that there was nothing about the size, configuration, topography, or location of the land itself

which made it uniquely suited for the construction of a 990-foot tower. In addition, the court found that the land was equally suitable for any of the other permitted uses listed in the ordinance, *i.e.*, warehousing, wholesale commercial, light manufacturing, car repair, professional offices, etc.

In order to satisfy the statutory requirement of uniqueness, the primary consideration for the court must be the peculiar topography of the land, not the unique or unusual circumstances or needs of the applicant. Although the property owned by Metroplex may be unique because its frontage and depth allow the tower and the building to be built on the property, there is no evidence to indicate that the size or shape of the land mandates a departure from the 75-foot maximum allowable height.

We agree with the district judge that the evidence does not show that the property had the unique and unusual characteristics required to support the Board's grant of the variance.

## Unnecessary Hardship

The district judge found that the evidence did not support the Board's finding that the height restriction was an unnecessary hardship. The court's finding was based on the fact that Metroplex had purchased the property knowing that there was a 75-foot height restriction. When Metroplex closed the contract to purchase the property in November 1986, it had knowledge that the City had filed a petition challenging the Board's decision to grant the variance. In addition, the district court found that denial of the variance would not constitute an unnecessary hardship to Metroplex because, although Metroplex had an ongoing business in the Kansas City area, it did not have an ongoing business at the Merriam site.

Metroplex contends that the district court incorrectly interpreted the concept of "unnecessary hardship" in the context of an area variance by relying on this court's definition in *Stice v. Gribben-Allen Motors, Inc.*, 216 Kan. 744, a case dealing with a use variance.

In *Stice*, the plaintiffs appealed the trial court's decision affirming the Labette County Board of Zoning Appeals' decision to grant Gribben-Allen a use variance for the construction of an automobile sales and service facility in an area zoned residential. We determined that, to constitute an unnecessary hardship jus-

tifying a variance, *the use restriction,* viewing the property in its environment, must be so unreasonable as to become an arbitrary and capricious interference with the basic right of private property ownership; or there must be convincing proof that it is *impossible to use the property* for a conforming purpose; or there must be factors sufficient to constitute a hardship that would deprive the owner of his property without compensation. An unnecessary hardship exists when all the relevant factors taken together show that the plight of the location concerned is unique in that it *cannot be put to a conforming use* because of the limitations imposed upon the property by reason of its classification in a specific zone. *Stice,* 216 Kan. at 751 (citing *Peterson v. Vasak,* 162 Neb. 498, 508, 76 N.W.2d 420 [1956]).

In *Stice,* we found that the board's determination of unnecessary hardship was supported by only two factors: first, that Gribben-Allen had bought the land before the zoning ordinance went into effect; and, second, that it would be nearly twice as expensive to establish the business at a suitably zoned site. 216 Kan. at 750. We concluded that loss of potential profit alone could not establish unnecessary hardship as a basis for granting a use variance and reversed the decision of the board.

Metroplex argues that the focus of the definition of "unnecessary hardship" in *Stice* should apply only to a change in the *use* of the land. It contends that where an area variance is requested, no one seeks to use the property for other than a conforming purpose because an area variance merely frees the landowner from the harsh application of the zoning ordinances. Further, when an area variance is requested, it is nearly impossible to show that the restriction constitutes an "arbitrary and capricious interference" with the basic right of private property ownership because the restrictions of an area variance deal merely with measurements such as height, setbacks, area, yard, floor space, density, and similar restrictions.

Nevertheless, the *Stice* definition was applied in an area variance case recently decided by the Court of Appeals. In *City of Olathe v. Board of Zoning Appeals,* 10 Kan. App. 2d 218, that court upheld the district court's affirmance of the Board of Zoning Appeals' decision to grant a variance to a truck stop and filling station operator, C & C, Inc. The variance involved a

departure from a new sign ordinance which prohibited pole signs, but permitted preexisting nonconforming signs. Since the truck stop was adjacent to an elevated portion of Interstate 35, C & C had for some time displayed its business name on two free-standing pole signs. The sign ordinance provided that any change in business name would be deemed a new sign and become subject to the ordinance. When a change in corporate ownership mandated a change in C & C's sign, the company applied for a variance which was granted by the Board and affirmed by the district court. The City appealed and the Court of Appeals affirmed.

Applying the *Stice* definition of "unnecessary hardship," the Court of Appeals concluded that in *Stice* there had been no showing of hardship. There, the land was purchased in an undeveloped state and there was only a loss of potential profits. In *City of Olathe*, C & C's loss was a real and immediate one to an ongoing business and not of its own making. 10 Kan. App. 2d at 223-24.

Here, there was some evidence that the circumstances of Metroplex's move from its present site were not of its own making. Because construction around Metroplex's present location created interference with its ability to meet new FCC requirements, Metroplex faces the loss of its FCC license unless a 990-foot tower can be built. Further, any alternative site in Merriam zoned for use as a communication facility would still have required a height variance to allow a 990-foot tower. In addition, Metroplex argues that it was entitled to rely on the decision of the Board of Zoning Appeals granting the variance. Therefore, Metroplex claims it demonstrated that, unless it can move to the site, it is faced with a real and immediate loss of its ongoing business, as was the applicant in *City of Olathe*.

The district judge reasoned that Metroplex's hardship was of its own making. It is the general rule that a variance may not be granted to relieve a self-created hardship. A hardship may be self-created when the applicant purchased the property with knowledge of the zoning restriction. See *Abel v. Zoning Board of Appeals*, 172 Conn. 286, 374 A.2d 227 (1977). See also 6 Rohan, Zoning and Land Use Controls § 43.02(2)(1987). Here, after Metroplex entered into a contract to purchase the property, the

75-foot height restriction became applicable. Subsequently, the Board granted the variance and Metroplex renewed its contract to purchase. The City then filed its petition to review the Board's grant of the variance and, subsequently, Metroplex closed on the property.

We are not in full agreement with the district judge's determination (1) that since Metroplex knew that the City had filed an appeal of the Board's decision, it should not have closed on the property until the appeal had been finally determined, and (2) that an unnecessary hardship did not exist because Metroplex had not developed the property prior to the City's passing of the 75-foot height restriction. However, because Metroplex did not have an ongoing business at the site, we cannot say as a matter of law that the district judge improperly followed the reasoning of *City of Olathe.*

## Conformity with General Spirit and Intent of the Ordinance

The district judge concluded that the requested variance amounted to a substantial departure from the established zoning and, therefore, violated the spirit and intent of the ordinance. In *Stice*, this court held that the establishment of an auto sales and service business in the middle of a residential district violated the spirit and intent of the zoning ordinance because it intruded upon the legislative authority of the county commission to grant a rezoning. 216 Kan. at 756. Metroplex argues that the use of the property as a communication facility and a relay station is a permitted use; therefore, the variance will simply permit a tower of the height required by FCC regulations.

The Board determined that the 75-foot restriction was enacted out of concern for the adequacy of the City's fire prevention resources for inhabited structures; therefore, the construction of a taller uninhabited facility would not violate the spirit and intent of the ordinance. The City argues that, since no evidence was presented regarding the original purpose of the 75-foot height restriction, the Board's determination, "based upon experience alone," must be disregarded.

This argument is without merit. Administrative agencies frequently acquire specialized knowledge in a particular field. This factor may broaden judicial notice, so that it may be proper and in accord with due process for a board of zoning appeals to rely

upon facts within its own knowledge if these facts are set forth for the purpose of judicial review. See 2 Am. Jur. 2d, Administrative Law § 386, p. 192-94.

The district judge placed primary emphasis on the 990-foot height of the structure, stating:

"Metroplex argues that the design for the tower will be aesthetically pleasing and incorporate important safety features. While it does appear that Metroplex is proposing to build a tower that is as unobtrusive as possible, and attractive as possible, and as safe as possible, these arguments simply ignore the fact that it will be 990 feet tall. The tower would be taller than a 80 story building. In an area where the skyline primarily consists of treetops, this tower would stick out like a sore thumb. The variance granted by the Board did in fact depart substantially from the established height restrictions, and thus violates the general spirit and intent of the zoning ordinance."

We recognize that Metroplex provides important communication services to the greater Kansas City area including 24-hour answering services, local and nationwide paging, cellular telephones, two-way radios, and 800-megahertz trunking radios. It provides services to the medical community, police departments, towing services, and ambulance services, among others. Metroplex's request for a variance is not solely for financial gain, but is dictated by FCC requirements which go into effect in 1988. However, the legislature in enacting K.S.A. 12-715 has stated that an area variance may not be granted unless all five statutory conditions are met. Metroplex clearly was unable to meet the requirement that the need for the variance arose from the unique conditions of the property.

Further, we must recognize that the height of the proposed tower greatly exceeds the restriction in the ordinance; it exceeds the restriction of 75 feet by more than 900 feet. The district court considered the height of the tower in light of the other facts and circumstances of this case. We cannot ignore that fact.

Affirmed.