(286 P.3d 222)
No. 107,214

LARRY HACKER, TERRY HACKER, RICHARD GRONNIGER, and KANSAS PAVING COMPANY, a Kansas Corporation, *Appellees*, v. SEDGWICK COUNTY, KANSAS, and Its BOARD OF ZONING APPEALS, *Appellants*.

Opinion filed September 14, 2012.

*Robert W. Parnacott*, assistant county counselor, for appellants.

*Steve M. Stark*, of Fleeson, Gooing, Coulson & Kitch, L.L.C., of Wichita, for appellees.

Before HILL, P.J., MALONE and STANDRIDGE, JJ.

MALONE, J.: The Sedgwick County, Kansas, Board of Zoning Appeals (Board) appeals the district court's decision vacating the Board's grant of three zoning variances to Norman and Leatha Hein related to their lawn care business operated from their rural home. The Board argues that Larry Hacker, Terry Hacker, Richard Gronniger, and Kansas Paving Company, who are the owners and lessees of real property adjacent to the Heins' property, lacked standing to appeal the Board's grant of the zoning variances to the district court, and that therefore the district court lacked jurisdiction to rule on the matter. The Board also argues that the district court erroneously determined that strict application of the zoning regulations would not constitute an unnecessary hardship, as required under K.S.A. 12-759(e)(1)(C), because the hardship was imposed by the Heins' self-created business growth. We conclude that under the facts of this case, the neighboring landowners had standing under K.S.A. 12-759(f) to appeal the Board's grant of the zoning variances. We also conclude as a matter of law that self-created business growth is not an exception to the general rule that unnecessary hardship may not be self-created. Accordingly, we affirm the district court's judgment vacating the zoning variances.

The Heins have operated a lawn care business from their rural home for over 30 years. The business is located on a portion of their 75-acre tract of land on West 73rd Street North in Sedgwick County, Kansas. The property is zoned RR Rural Residential. In 1990, the Heins petitioned for and were granted two zoning variances by the Board: (1) to allow the business to operate within 220 feet of a nearby residence; and (2) to allow up to four employees on the property at any given time. In granting the second variance, the Board noted that the business was primarily conducted off site and that the employees would only be at the property for a limited amount of time in order to maintain and transport the lawn care equipment, which was stored at the property. The Heins later explained that although they employed 19 people at that time, most employees reported directly to the job sites and did not need to go to the property.

In 2010, the Heins filed a petition with the Board for three variances: (1) to allow up to 20 employees with no more than 15 on site in excess of 1 hour per day; (2) to allow the use for business purposes of existing outbuildings with a combined floor area exceeding 3,000 square feet; and (3) to allow outdoor storage closer to the street than the buildings used for the business and closer than 200 feet from property lines. In their petition, the Heins alleged that new variances were necessary because they had "obtained additional customers and changed the way their employees work." Specifically, the Heins stated that more equipment was stored at the property and employees now met at the property and rode together to job sites. The Heins further stated that, as part of their commitment to keeping their full-time employees at work even during inclement weather, the new variances were necessary to permit employees to perform occasional yard work and equipment maintenance at the property.

Board staff prepared a report on the Heins' petition. Staff considered each of the five criteria under K.S.A. 12-759(e)(1) that must be met before the Board may grant a variance. Staff recommended that the Board deny the first variance, finding that the increased number of employees would violate four of the five criteria. In particular, staff found that strict application of the zoning

regulations would not constitute an unnecessary hardship under K.S.A. 12-759(e)(1)(C) because the hardship was imposed by the Heins' self-created business growth. Staff recommended that the other two variances be granted subject to certain conditions.

On October 12, 2010, the Board held a meeting at which the Heins' petition was considered. After receiving staff's report, the Board heard comments on the matter. Norman Hein explained that the reason for requesting the first variance, to increase the number of employees allowed on the property, was that the business now needed six drivers to transport the lawn care equipment as opposed to the four drivers needed in 1990. Furthermore, the variance would allow employees to gather at the property and catch rides to the job sites and would account for the occasional situation in which employees performed yard work and equipment maintenance at the property. Several of Heins' neighbors and customers spoke in support of the petition for variances.

But Richard Gronniger, who owns the property just south of the Heins across West 73rd Street North, and Terry Hacker, who operates Kansas Paving, a sand pit on Gronniger's property, spoke in opposition to the Heins' petition. They argued that the requested variances were tantamount to rezoning and that since Gronniger and Kansas Paving were paying for road maintenance in relation to the conditional use permit to operate the sand pit, the Heins should also be required to seek a conditional use permit and contribute to road maintenance costs. Hacker stated that Kansas Paving spends about $15,000 per year on road maintenance costs. He believed that because the Heins' business constituted about one-third of the traffic on West 73rd Street North, the Heins should contribute about $5,000 per year for road maintenance costs.

The Board found that all five criteria under K.S.A. 12-759(e)(1) had been met for each variance and granted all three requested variances subject to certain conditions. On November 10, 2010, Larry Hacker, Terry Hacker, Richard Gronniger, and Kansas Paving (plaintiffs) filed a petition in the district court under K.S.A. 12-759(f) and K.S.A. 12-760 challenging the reasonableness of the Board's decision. They argued that the decision was not supported by substantial evidence and requested either that the variances be

vacated as unreasonable or that the matter be remanded to the Board for further findings.

On April 14, 2011, the district court held a bench trial based on stipulated facts. Based on the evidence presented, the district court rejected the plaintiffs' argument that the Heins were required to seek a conditional use permit rather than zoning variances. The district court further found that the requested variances were properly classified as area variances (as opposed to use variances) and as such, the Board had the authority to grant those variances if all five criteria under K.S.A. 12-759(e)(1) were supported by substantial evidence. Although the district court was satisfied that four of the five criteria were supported by substantial evidence, the court found that the Board had failed to adequately address whether strict application of the zoning regulations constituted an unnecessary hardship as required by K.S.A. 12-759(e)(1)(C). The district court remanded the case to the Board to specifically address whether the hardship was self-created.

On remand, the Board found that the hardship was not self-created. The Board reasoned that the Heins had a vested property right in their business and that reasonable growth of an existing business was not a self-created hardship under Kansas caselaw. In light of the Board's findings, the parties submitted supplemental briefs to the district court. On October 28, 2011, the district court concluded the bench trial. The district court found that all three requested variances were the result of the Heins' business growth and that the business growth was the result of the Heins' conscious effort to increase their customer base. Furthermore, the district court found that the Heins grew their business with full knowledge of the zoning regulations under which they were operating. The district court rejected the Board's interpretation of Kansas caselaw and found that self-created business growth was not a reasonable basis for granting an area variance under K.S.A. 12-759(e)(1). The district court reasoned that it would be poor precedent to allow an area variance due to self-created business growth because there would be virtually no limitations on the granting of such variances. The district court determined that the Board's findings were based on an incorrect interpretation of the law and were not supported

by substantial evidence. Accordingly, the district court vacated the Board's grant of the three variances. The Board timely appealed the district court's judgment.

On appeal, the Board first argues that the plaintiffs lacked standing to appeal the Board's grant of the zoning variances to the district court, and that therefore the district court lacked jurisdiction to rule on the matter. Although the Board did not challenge the plaintiffs' standing in district court, the Board asserts that standing is a component of subject matter jurisdiction, which may be raised for the first time on appeal. As to the merits of the district court's ruling, the Board argues on appeal that there was substantial competent evidence to support the Board's finding that the hardship was not self-created by the Heins, and that the Board correctly interpreted and applied Kansas law. Thus, the Board argues that the district court erred in vacating the three variances.

## STANDING AND JURISDICTION

The Board argues that the plaintiffs lacked standing to appeal the Board's decision to the district court and that therefore the district court lacked jurisdiction to rule on the matter. The Board contends that the only available avenue for the plaintiffs to appeal was under K.S.A. 12-759(f), which permits appeals to the district court by any person "dissatisfied with" the decision of a board of zoning appeals. The Board urges this court to interpret "dissatisfied with" as used in K.S.A. 12-759(f) to confer standing only on some narrower class of persons, e.g., original parties to proceedings before a board of zoning appeals, than the class of persons "aggrieved by" the zoning decision of a city or county who are permitted to appeal to the district court under K.S.A. 12-760. The Board concludes that the plaintiffs had no legitimate, particularized interest that was impacted by the Board's decision sufficient to confer standing under either the established "aggrieved by" standing test of K.S.A. 12-760 or the allegedly narrower "dissatisfied with" standing test of K.S.A. 12-759(f).

The plaintiffs argue that they could appeal under both K.S.A. 12-759(f) as persons "dissatisfied with" the Board's decision and under K.S.A. 12-760 as persons "aggrieved by" the Board's deci-

sion. They contend that the standing requirement of K.S.A. 12-759(f) should not be construed in the manner urged by the Board, *i.e.*, as conferring standing only on original parties to proceedings before a board of zoning appeals, because such a limitation would effectively prevent neighbors from appealing decisions that adversely impact their interests. The plaintiffs instead suggest that this court adopt a broader standing test for K.S.A. 12-759(f) that would confer standing on any interested person who submitted written comments and/or made oral comments at a board of zoning appeals hearing. The plaintiffs conclude that they had particularized interests—namely, increased traffic and increased maintenance costs for West 73rd Street North—to confer standing under the established "aggrieved by" standing test of K.S.A. 12-760 and that they also sufficiently participated in proceedings before the Board to confer standing under their suggested "dissatisfied with" standing test of K.S.A. 12-759(f).

Standing is a component of subject matter jurisdiction, which may be raised for the first time on appeal. *State v. Ernesti,* 291 Kan. 54, 60, 239 P.3d 40 (2010). Whether standing exists is a question of law subject to unlimited review. *State v. Gilbert,* 292 Kan. 428, 431-32, 254 P.3d 1271 (2011). Resolution of this issue also requires this court to interpret K.S.A. 12-759 and K.S.A. 12-760. Interpretation of a statute is a question of law over which an appellate court has unlimited review. *Unruh v. Purina Mills,* 289 Kan. 1185, 1193, 221 P.3d 1130 (2009).

The Kansas Legislature has enabled cities and counties to enact planning and zoning laws for the protection of public health, safety, and welfare. K.S.A. 12-741 *et seq.* K.S.A. 12-759 provides that when a city or county has enacted zoning ordinances or regulations, it must also create a board of zoning appeals. The statute describes the organization and administration of such boards and sets out the various matters a board may hear and decide. Finally, subsection (f) permits certain interested persons to appeal a board's decision to the district court:

"Any person, official or governmental agency *dissatisfied with* any order or determination of the board may bring an action in the district court of the county

to determine the reasonableness of any such order or determination. Such appeal shall be filed within 30 days of the final decision of the board." (Emphasis added.)

K.S.A. 12-760 provides in part: "(a) Within 30 days of the final decision of the city or county, any person *aggrieved thereby* may maintain an action in the district court of the county to determine the reasonableness of such final decision." (Emphasis added.) The plaintiffs argue that they could appeal from the Board's decision under both K.S.A. 12-759(f) and K.S.A. 12-760. But a specific statute controls over a general statute. *In re K.M.H.*, 285 Kan. 53, 82, 169 P.3d 1025 (2007), *cert. denied* 555 U.S. 937 (2008). K.S.A. 12-759(f), which applies only to decisions made by a board of zoning appeals, is more specific than K.S.A. 12-760, which on its face applies to any final planning or zoning decision made by a city or county. Because the specific statute controls, we conclude that the legislature intended for appeals from a board of zoning appeals to be governed solely by K.S.A. 12-759(f).

Given that the plaintiffs' only available avenue of appeal was under K.S.A. 12-759(f), we must determine whether plaintiffs had standing under that statute to appeal to the district court. Although the parties argue at length about whether and how "dissatisfied with" under K.S.A. 12-759(f) should be differently interpreted from "aggrieved by" under K.S.A. 12-760, neither party cites any controlling authority to support their respective interpretations. Under the plain meaning of the statutory language, any person "dissatisfied with" a board of zoning appeals' decision covers a broader group than any person "aggrieved by" a decision of the board. A person can be "dissatisfied with" a board of zoning appeals' decision even if that person's pecuniary interest was not adversely affected by the decision. But it would make no sense to allow any person to appeal a board of zoning appeals decision to the district court unless the decision somehow adversely affected the person's pecuniary interest.

In the absence of any obvious reason or persuasive authority suggesting that the class of persons who have standing to appeal a board of zoning appeals' decision under K.S.A. 12-759(f) should be any more or less restricted than the class of persons who have

standing to challenge any other zoning decision by a city or county under K.S.A. 12-760, it is reasonable to apply the same standing test under both statutes. Thus, we construe the "dissatisfied with" standard under K.S.A. 12-759(f) to mean the same as the "aggrieved by" standard under K.S.A. 12-760.

This court has previously articulated a test for whether a person has standing to appeal to the district court under the "aggrieved by" standard set forth in K.S.A. 12-760. In *Tri-County Concerned Citizens, Inc. v. Board of Harper County Comm'rs*, 32 Kan. App. 2d 1168, 95 P.3d 1012, *rev. denied* 278 Kan. 852 (2004), the plaintiffs, a concerned citizens group along with individual petitioners, brought an action under K.S.A. 12-760 challenging the county's grant of a special use permit to a waste disposal company to build a sanitary landfill. The district court set aside the special use permit, and the waste disposal company appealed to this court. The waste disposal company argued that the plaintiffs lacked standing to challenge the county's decision under K.S.A. 12-760. This court applied the following test to determine whether the plaintiffs had standing to appeal the county's decision to issue the special use permit:

" 'Any person aggrieved' as contained in K.S.A. 12-760, means a person who suffers a substantial grievance, a denial of some personal or property right, or the imposition of some burden or obligation. It does not refer to persons who may happen to entertain desires on the subject but only to those who have rights which may be enforced at law and whose pecuniary interest may be affected." 32 Kan. App. 2d 1168, Syl. ¶ 2.

This court found that, under the above definition, the plaintiffs were "aggrieved" and thus had standing to sue. The court noted that the plaintiffs lived within 1,000 feet of the proposed landfill and would potentially suffer substantial grievance and a loss of pecuniary interest not shared by the general public. 32 Kan. App. 2d at 1174-75.

Adopting and applying the *Tri-County* standing test in this case, we find that the plaintiffs have alleged a substantial grievance and impact on a pecuniary interest sufficient to confer standing. The plaintiffs are the owners, lessees, and occupiers of real property just south of the Heins across West 73rd Street North. As part of

the plaintiffs' conditional use permit to operate a sand pit on the property, they are required to treat and maintain a portion of West 73rd Street North. Increased traffic on that street, which is a likely result of the requested variances, would directly impact the plaintiffs' road maintenance costs. We conclude that the plaintiffs have a substantial grievance and pecuniary interest related to road maintenance, not shared by members of the general public, and thus have standing under K.S.A. 12-759(f) to challenge the Board's decision.

## UNNECESSARY HARDSHIP

As to the merits of the district court's ruling, the Board argues that it had the authority to grant the requested variances because all five statutory criteria under K.S.A. 12-759(e)(1) were supported by substantial evidence. In particular, the Board argues that an unnecessary hardship under K.S.A. 12-759(e)(1)(C) may be found where the hardship is imposed by self-created business growth. The Board urges this court to take a less restrictive view of unnecessary hardship in light of modern trends in zoning law which give more consideration to the constitutional right to enjoy property. The plaintiffs argue that hardship imposed by self-created business growth cannot constitute an unnecessary hardship under K.S.A. 12-759(e)(1)(C) and thus the Board's grant of the variances was not supported by substantial evidence and was not within the Board's authority.

The district court's scope of review of a board of zoning appeals' decision to grant a variance is restricted to considering whether, as a matter of law: (a) the board of zoning appeals acted fraudulently, arbitrarily, or capriciously; (b) the board's decision is substantially supported by the evidence; and (c) the board's action was within the scope of its authority. The second two factors flow together, because in determining whether a decision was within the Board's authority, the district court must determine whether there is substantial evidence to support the findings required to grant the variance. On appeal, this court applies the same scope of review as the district court. *City of Olathe v. Board of Zoning Appeals*, 10 Kan. App. 2d 218, 222-23, 696 P.2d 409 (1985). To the extent that

resolution of this issue requires this court to interpret the criteria for granting an area variance under K.S.A. 12-759(e)(1), our review is unlimited. *Unruh*, 289 Kan. at 1193.

Kansas law contemplates two types of variances: (1) use variances, which permit a use of land other than that prescribed by the zoning regulations and inconsistent with uses in the surrounding area; and (2) area variances, which have no relation to change of use, but allow for modifications of area, yard, height, floor space, frontage, density, setback, and similar restrictions. *City of Merriam v. Board of Zoning Appeals*, 242 Kan. 532, 537, 748 P.2d 883 (1988). Under K.S.A. 12-759(e)(1), a board of zoning appeals is authorized to grant an *area* variance only if all five statutory criteria are met. Those criteria do not apply to *use* variances, which are permitted under K.S.A. 12-759(e)(2) only if specifically authorized by the applicable zoning regulation. See 242 Kan. at 537-38 (construing identical language in predecessor statute). Here, the district court found that all three variances were area variances, a finding which none of the parties contest.

The only criteria for granting an area variance at issue here is the "unnecessary hardship" criteria set forth in K.S.A. 12-759(e)(1)(C). K.S.A. 12-759 states in part:

"(e) When deemed necessary by the board of zoning appeals, the board may grant variances and exceptions from the zoning regulations on the basis and in the manner hereinafter provided: (1) To authorize in specific cases a variance from the specific terms of the regulations which will not be contrary to the public interest and where, due to special conditions, a literal enforcement of the provisions of the regulations, in an individual case, results in unnecessary hardship, and provided that the spirit of the regulations shall be observed, public safety and welfare secured, and substantial justice done. Such variance shall not permit any use not permitted by the zoning regulations in such district. A request for a variance may be granted in such case, upon a finding by the board that all of the following conditions have been met: . . . (C) that the strict application of the provisions of the zoning regulations of which variance is requested will constitute an unnecessary hardship upon the property owner represented in the application."

Several Kansas cases construe the meaning of "unnecessary hardship" under predecessor statutes to K.S.A. 12-759(e)(1). In *Stice v. Gribben-Allen Motors, Inc.*, 216 Kan. 744, 534 P.2d 1267 (1975), the plaintiffs, who were homeowners in a zoned residential

area, challenged the board of zoning appeals' grant of a variance to allow the defendant to build a car dealership in the neighborhood. The defendant had purchased the tract of land in June 1970 after the county had formally determined to zone the area but before the effective date of the zoning regulations. In 1973, after the defendant's rezoning petition was denied by the county planning commission, the defendant applied for a variance from the county board of zoning appeals. The board approved the petition and issued a building permit for the car dealership but shortly thereafter rescinded its order. The defendant ignored the rescission order and began construction on the car dealership. The plaintiffs challenged the grant of the variance, but the district court upheld the board's original order.

On appeal, our Supreme Court considered whether there was substantial evidence to support the board's finding that strict application of the zoning regulations would cause unnecessary hardship on the defendant, as required under K.S.A. 19-2934a(b)(3) (Ensley 1988). In particular, the court considered whether the requisite unnecessary hardship could be based on either: (1) the fact that the defendant bought the land, with the intent to build a car dealership, before the zoning regulations went into effect; or (2) the fact that it would be more expensive for the defendant to build at a more suitably zoned site. 216 Kan. at 750. The *Stice* court rejected both alleged bases of unnecessary hardship, finding that zoning was a future certainty when the defendant purchased the land and that the defendant had failed to apply for a nonconforming use permit. More importantly, the court reasoned that a person's intention when purchasing land cannot form a basis for a finding of unnecessary hardship and that a landowner's desire for pecuniary advantages only comes into play when the zoning regulation deprives the landowner of any economically feasible use of the property. 216 Kan. at 752. In reaching this conclusion, the *Stice* court relied on the following definition of unnecessary hardship:

" 'The criterion of unnecessary hardship is that the use restriction, viewing the property in the setting of its environment, is so unreasonable as to constitute an arbitrary and capricious interference with the basic right of private property; or that there is convincing proof that it is impossible to use the property for a con-

forming purpose; or that there are factors sufficient to constitute such a hardship that would in effect deprive the owner of his property without compensation. An unnecessary hardship exists when all the relevant factors taken together convince that the plight of the location concerned is unique in that it cannot be put to a conforming use because of the limitations imposed upon the property by reason of its classification in a specific zone.' " 216 Kan. at 751 (quoting *Peterson v. Vasak*, 162 Neb. 498, 508, 76 N.W.2d 420 [1956]).

In *City of Olathe*, the city challenged the board of zoning appeals' grant of a variance to the defendant, who operated a filling station and truck stop along Interstate 35, to change the business name on its free-standing pole signs. The request for the variance was made necessary by the city's new ordinance, which prohibited pole signs but permitted preexisting nonconforming signs. The defendant, who was a franchisee of a national company, was required by the new owners of the national company to either change its business name or lose its franchise license. However, by changing the name on the pole sign, the sign would be considered a new sign and would no longer fall under the preexisting use exception. The district court upheld the board's order granting the variance.

On appeal, this court considered whether there was substantial evidence supporting all five criteria necessary for the board to grant an area variance under K.S.A. 12-715(a) (Ensley 1982), including unnecessary hardship. This court found there was substantial evidence that the defendant would suffer unnecessary hardship if it were not permitted the variance because (1) the name change was not the defendant's own decision but forced upon the defendant by the national company and (2) the defendant alleged that it would go out of business if it were to take down the pole signs completely. This court distinguished *Stice* on the basis that the hardship in that case was only the loss of potential profitable use of the land, as opposed to the complete loss of an ongoing business. 10 Kan. App. 2d at 223-24.

In *City of Merriam*, the city challenged the board of zoning appeals' grant of a variance to the defendant, a telecommunications company, to build a 990-foot communications tower necessary for the defendant to meet FCC regulations. The defendant entered into a contract to purchase the land in October 1985, before there

were any height restrictions in the applicable zoning regulation. A 75-foot height restriction was enacted in January 1986, and the defendant shortly thereafter petitioned for the variance, which the board granted subject to certain requirements. The defendant immediately renewed its contract to purchase the land. Several weeks later, the city filed an appeal with the district court. The defendant closed on the purchase contract before the district court issued its decision.

The district court reversed the board, finding that three of the five criteria under K.S.A. 12-715(a) (Ensley 1982) had not been met and thus the board had acted outside its authority in granting the variance. 242 Kan. at 535-36. With respect to the unnecessary hardship requirement of K.S.A. 12-715(a)(3) (Ensley 1982), the district court found that the hardship was self-created by the defendant's decision to close on its purchase contract before the appeal had been finalized. The district court further found that no unnecessary hardship existed because the defendant had not developed the property prior to the passing of the 75-foot height restriction. 242 Kan. at 539, 542.

On appeal, our Supreme Court acknowledged that, as a general rule, a variance may not be granted to relieve a self-created hardship. Furthermore, a hardship may be self-created when the landowner purchased the property with knowledge of the zoning restrictions. 242 Kan. at 541. Although our Supreme Court was "not in full agreement" with the district court's findings, the court could not say as a matter of law that the district court had erred since the defendant did not have an ongoing business at the site in question. 242 Kan. at 542.

Finally, in *Cooper v. City of Kansas City*, No. 61,980, unpublished opinion filed November 4, 1988 (Kan. App.), the defendants built a commercial building that intruded 9 inches into the side-yard setback required by zoning regulations. The abutting landowner complained, so the defendants sought and were granted a curative variance from the board of zoning appeals. The district court upheld the board's decision. On appeal, this court rejected the board's finding that the requisite unnecessary hardship was satisfied by the combined economic hardship on the defendants,

who would have to alter the building, and the good-faith calculation error by the defendants' architect. This court found that, unlike the hardship in *City of Olathe*, this hardship was clearly self-created. Furthermore, this court found that there is no good-faith exception to the rule that an unnecessary hardship cannot be self-created. Slip op. at 4-7.

Several relevant principles can be drawn from the above cases. *Stice* concerned a use variance, which was permitted under the statute applicable at that time, and it would be inappropriate to apply the strict definition of "unnecessary hardship" used in that case in the context of area variances. Nevertheless, *Stice* supports the proposition that mere economic advantage or disadvantage to the landowner applying for the variance does not in itself constitute unnecessary hardship. *City of Olathe* and *City of Merriam* both support the proposition that unnecessary hardship may be found where strict application of the zoning regulations would result in the complete loss of an existing business at the location in question, but not where strict application would merely prevent increased profitable use of that land. Finally, *Stice, City of Olathe, City of Merriam,* and *Cooper* all indicate that where a hardship is self-created, it cannot be deemed to be an unnecessary hardship. Under *Stice* and *City of Merriam,* a hardship may be self-created where the landowner purchased the property with knowledge of the zoning restrictions. Under *Cooper,* a hardship may be self-created even where it was the result of a good-faith error.

Returning to our facts, it is clear that the variances requested by the Heins would be economically advantageous to their business because the variances would allow more equipment storage space and more drivers to transport the equipment, which in turn would allow the Heins to serve more customers. Furthermore, to the extent that the Heins would lose existing customers and be required to reconfigure their business operations, it is reasonable to infer that the Heins would suffer economic disadvantage without the variances. Nonetheless, there is no indication that the Heins would lose their business without the variances; the business would simply be less profitable.

As to whether the hardship was self-created, the Heins acknowledged to the Board that the requested variances were made necessary as a result of their self-created business growth. Although there are no Kansas cases directly addressing whether self-created business growth can ever constitute an unnecessary hardship, courts of other jurisdictions have rejected that position. See, *e.g.*, *Bowman v. City of York*, 240 Neb. 201, 212-13, 482 N.W.2d 537 (1992) (finding no undue hardship where business sought variance from setback requirement in order to expand its facilities and increase its profits); *Ken-Med Associates v. Bd. of Tp.*, 900 A.2d 460, 466 (Pa. Commw. 2006) (holding that "expanding the use of a particular property to maximize profitability is not a sufficient hardship to justify the granting of a variance, because such financial hardship is in the form of a self-inflicted hardship"). The *Bowman* court stated that although a business' desire to maximize its profits "is certainly an understandable, even laudable, goal, it does not provide a basis for riding roughshod over the rights of others by obtaining a variance from zoning regulations with which the rest of the community must live." 240 Neb. at 213.

Given that the main purpose underlying self-created business growth is generally to maximize a business' profits, and given that Kansas courts have indicated that mere economic advantage or disadvantage to a landowner is not a sufficient basis for a finding of unnecessary hardship, we conclude as a matter of law that self-created business growth is not an exception to the general rule that unnecessary hardship may not be self-created. Here, the Heins acknowledged that the requested variances were made necessary by their self-created business growth. Thus, the district court properly determined that the Board's finding of unnecessary hardship was not supported by substantial evidence. The district court's determination was bolstered by its finding that the Heins grew their business with full knowledge of the zoning regulations under which they were operating. Because the Board's findings were not supported by substantial evidence, the district court properly determined that the Board had acted outside the scope of its authority in granting the variances. Accordingly, we conclude that the district court did not err in vacating the variances granted by the Board.

Affirmed.