No. 116,095

## IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JOHN KENNEDY LAYLE,
TRUSTEE OF THE JOHN KENNEDY LAYLE JR. REVOCABLE TRUST,
U/T/D 8/26/97, et al.,
*Appellants*,

v.

CITY OF MISSION HILLS, KANSAS, et al.,
*Appellees*.

## SYLLABUS BY THE COURT

1.

A person dissatisfied with any order or determination of a Board of Zoning Appeals may bring an action in the district court to determine the reasonableness of any such order or determination. K.S.A. 12-759(f).

2.

K.S.A. 12-759 does not mean that the district court reviews a question of law solely for reasonableness. Instead, the district court's review of a zoning board's decision is de novo to the extent the board's decision interpreted a zoning regulation or statute.

3.

The district court should independently determine the meaning of controlling terms in applicable zoning regulations and then determine whether a board's decision was reasonable in light of that statutory construction.

4.

The interpretation of a statute by an administrative agency is not binding upon a court, and we owe no deference to an agency's interpretation of its own regulations.

1

5.

On appeal from a decision of a zoning board, the appellate court applies the same scope of review as does the district court.

6.

When a municipal ordinance is plain and unambiguous, we must give effect to its express language. We will not speculate on legislative intent and will not read the ordinance to add something not readily found in it. If the language of the ordinance is clear, we have no need to resort to canons of statutory construction. When construing an ordinance, we give words in common usage their natural and ordinary meaning.

7.

Our review of the reasonableness of a board's ultimate decision is limited to determining if:  (a) the Board of Zoning Appeals acted fraudulently, arbitrarily, or capriciously; (b) the Board's decision is substantially supported by the evidence; and (c) the Board's action was within the scope of its authority.

Appeal from Johnson District Court; JAMES F. VANO, judge. Opinion filed August 18, 2017. Reversed.

*Douglas J. Patterson*, of Property Law Firm, LLC, of Leawood, and *J. Eugene Balloun*, *Tristan L. Duncan*, *Mitchell F. Engel*, and *Justin D. Smith*, of Shook, Hardy & Bacon L.L.P., of Kansas City, Missouri, for appellant.

*George F. Verschelden* and *Anna M. Krstulic*, of Stinson Leonard Street LLP, of Kansas City, Missouri, for appellee.

Before GREEN, P.J., POWELL and GARDNER, JJ.

GARDNER, J.: John Kennedy Layle, individually and as Trustee of the John Kennedy Layle Jr. Revocable Trust, and Shari Layle appeal a decision by the City of Mission Hills, Kansas, that work the Layles proposed to do on their residential fence was not merely a repair but a replacement for which the zoning regulations required variances and a building permit. Agreeing with some of his arguments and finding no need to reach others, we reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts are undisputed and we merely summarize them here. John and Shari Layle have owned their home in Mission Hills for over 20 years. It is now held in the John Kennedy Layle Jr. Revocable Trust. The home was built in the 1940s and included a fence enclosing a portion of the front yard in addition to the back and side yards. Their fence predated enactment of the zoning regulations, which specified the allowable height, location, and orientation of fences. The Layles' fence did not comply with those regulations, but the City granted them variances on two occasions, allowing them to replace the fence according to its existing specifications instead of meeting the regulations. In 1994, the variances were granted for replacement of their entire fence, and in 2000, the variances were granted for a replacement of one side of their fence.

By 2012, the Layles' fence was nearly 20 years old and the pickets and rails had deteriorated. The Layles' fence contractor applied for a building permit to remove all of the pickets and rails and install new ones, without moving or replacing the fence posts. The City Administrator denied the request, stating that the work would require variances and that she had no authority to issue a building permit without approval from the Architectural Review Board (ARB) and the Board of Zoning Appeals (Board).

To obtain a building permit in Mission Hills, a homeowner files an application with the City Administrator, who has been delegated the authority to "administratively

3

approve" exterior work that complies with the zoning regulations and is of the type that is routinely approved by the ARB. See Code of Ordinances City of Mission Hills (Code) § 5-144. If the City Administrator determines that the work does not meet the criteria, he or she has no authority to issue a building permit and must refer the matter to the ARB. The homeowner can either present his or her project to the ARB or appeal the administrator's decision to the Board pursuant to K.S.A. 12-759.

The ARB considers the aesthetics of the project to determine if it fits the character of the neighborhood. If the ARB approves the plans aesthetically, it may authorize the issuance of a building permit outright or may authorize it subject to the homeowner obtaining a variance from the Board. The Board may grant or deny the variance and approve or deny a building permit. See Code §§ 5-157, 5-159.

The ARB issued decisions in April and May 2012 that approved the Layles' plans aesthetically but required the Layles to obtain new variances for the location and height of the fence. The Layles took no action. This process was essentially repeated in 2013, and again the Layles did not seek variances from the Board.

In December 2014, the Layles wrote to the Deputy City Clerk requesting administrative approval to remove the pickets and rails on their fence—nearly 400 feet— and install new ones. The City Administrator responded that the proposed work could not be administratively approved because it was not merely a repair but was instead a replacement for which the zoning regulations required variances before a building permit could be issued.

The Layles appealed that decision to the Board. In February 2015, the Board affirmed the City Administrator's action, stating that the proposed work was a replacement of the fence and would thus require new variances. The Layles did not seek variances from the Board but instead appealed to the district court, which affirmed the

4

Board's decision. Disregarding the old maxim that you cannot fight city hall, the Layles appeal to us.

## I. DID THE DISTRICT COURT ERR IN APPLYING A REASONABLENESS STANDARD?

We first examine the Layles' argument that the district court should have applied de novo review to the Board's decision. The Board concluded that the proposed work was not merely a "repair," which would not require a variance, but was instead a "full replacement" of the fence, which would require variances because the existing fence did not comply with zoning regulations concerning height and location of fences.

In reviewing that decision, the district court applied a reasonableness standard not only to the Board's decision to require variances but also to the Board's interpretation of terms in the zoning regulations. The district court concluded that "the City's determination that the scope of the Layles' fence project is not a simple repair is reasonable." The district court agreed that the regulation could be interpreted in the manner advocated by the Layles but found itself constrained by the reasonableness standard of review, stating:

> "Replacing nearly 400 feet of a fence could be a 'repair' in someone's view. Reasonable minds could differ. . . . [T]he City determination that it is a replacement cannot logically be disregarded. That is not the lawful function of the Court in this review . . . . Much of the difficulty for the Court in reaching and articulating this decision has been the Court's acceptance of the logic of the Layles' position. However, the question legally before the Court is only whether the City's decision ultimately was a reasonable one."

The City contends that the district court correctly reviewed the Board's decision solely for reasonableness, as K.S.A. 12-759(f) provides that a person "dissatisfied with any order or determination of the board [of zoning appeals] may bring an action in the

5

district court of the county to determine the reasonableness of any such order or determination."

But an examination of how this language has been applied shows that to the extent that resolution of the issue requires a court to interpret regulatory or statutory criteria for variances, our review is de novo. "To the extent that resolution of this issue requires this court to interpret the criteria for granting an area variance under K.S.A. 12-759(e)(1), our review is unlimited. *Unruh*, 289 Kan. at 1193." *Hacker v. Sedgwick County*, 48 Kan. App. 2d 164, 173-74, 286 P.3d 222 (2012) (applying de novo review to definition of "unnecessary hardship" as used in the context of variances; finding the Board's grant of the variances was not supported by substantial evidence and was not within the Board's authority). Statutory construction is a question of law subject to de novo review, even when a court reviews a decision of a zoning board. *Zimmerman v. Board of Wabaunsee County Comm'rs*, 289 Kan. 926, 939, 973, 218 P.3d 400 (2009) (applying the reasonableness standard to the board's decision to amend zoning regulations to prohibit commercial wind farms in its county, but applying unlimited scope of review to the issue whether a resolution was preempted by statute because that "is a question of law, as is the interpretation of statutes and resolutions"). Whether proposed work on a fence constitutes a repair or a full replacement, as those terms are used in the relevant zoning regulations, first presents a question of law. Reviewing questions of law de novo does not encroach on the discretion of a zoning board or substitute the court's judgment for that of the zoning board. See *Leffel v. City of Mission Hills*, 47 Kan. App. 2d 8, 13, 270 P.3d 1 (2011).

Accordingly, we find that the district court erred in using a reasonableness standard when reviewing the Board's interpretation of terms in the zoning regulations. The interpretation of a regulation is a question of law subject to de novo review. *Robinson v. City of Wichita Employees' Retirement Bd. of Trustees*, 291 Kan. 266, 272, 241 P.3d 15 (2010); *Murphy v. Nelson*, 260 Kan. 589, 594, 921 P.2d 1225 (1996). The

6

district court, should have independently determined the meanings of "repair" and "replacement" and then determined whether the Board's decision was reasonable in light of that statutory construction. The interpretation of a statute by an administrative agency is not binding upon a court, and we owe no deference to an agency's interpretation of its own regulations. See *May v. Cline*, 304 Kan. 671, 675, 372 P.3d 1242 (2016) (citing *Douglas v. Ad Astra Information Systems*, 296 Kan. 552, 559, 293 P.3d 723 [2013]) (the doctrine of operative construction is abandoned, abrogated, disallowed, disapproved, ousted, overruled, and relegated to the history books).

On appeal, this court applies the same scope of review as the district court. *City of Olathe v. Board of Zoning Appeals*, 10 Kan. App. 2d 218, 222, 696 P.2d 409 (1985). We therefore owe no deference to an agency's interpretation of its own regulations and exercise unlimited review over such questions.

## II. WAS THE LAYLES' PROPOSED WORK A "REPAIR" OR A "FULL REPLACEMENT" OF THE FENCE?

Resolution of this case depends on whether the work proposed by the Layles is a repair of the fence or is instead a full replacement of the fence. Repairs can be administratively approved by the City Administrator without need of further approval and without regard to whether the structure complies with current regulations. See Code § 5-144. Code Section 5-128.C states: "Repairs may be made to any part of a structure even if the structure or the lot upon which it is located does not conform to the use regulations of these Zoning Regulations." The City explains that this section allow "a homeowner [to] make repairs to a nonconforming structure without City approval. . . . But anything beyond a repair must be approved by the City in the form of a variance."

To determine whether the proposed work was a repair of the fence, we look to the relevant definitions of the terms. Both "repair" and "fence" are defined in Code Section 5-

7

103. When a municipal ordinance is plain and unambiguous, we must give effect to its express language. *Robinson*, 291 Kan. at 272. We will not speculate on legislative intent and will not read the ordinance to add something not readily found in it. If the language of the ordinance is clear, we have no need to resort to canons of statutory construction. 291 Kan. at 272-73.

The zoning regulations define "repair," in relevant part, as: "Any act which is taken for the purpose of normal maintenance of an existing structure . . . but excludes full replacement of any type of structure." Code § 5-103.82. The Layles contend their proposed work is a repair because it is for the purpose of normal maintenance of their existing wood fence. The rails and pickets are made of untreated wood and have deteriorated over time. The posts, however, are made of treated wood and have not significantly deteriorated. The Layles proposed removing all of the pickets and rails and installing new ones. The Layles contend this is not a "full replacement" because they are not replacing the posts. The City argues that the extensiveness of the work—removing and replacing all of the pickets and rails for nearly 400 feet—makes it a full replacement of the fence.

"Full replacement" is not defined in the regulations. However, "fence" is defined as: "A structure typically constructed of posts[,] carrying boards, rails, pickets, metal bars or metal mesh erected around or by the side of an open space." Code § 5-103.43. Importantly, the ordinance further defines a "fence section" as "[t]hat portion of a fence . . . constructed between two (2) vertical fence posts." Code § 5-103.46. Accordingly, a fence is composed of vertical posts and the sections of pickets and rails between the posts.

It is uncontested that the Layles do not intend to replace the posts. Their proposal is to remove and replace the pickets and rails, which together are expressly defined as "fence sections." Code § 5-103.46. "'When construing a statute, a court should give words

8

in common usage their natural and ordinary meaning'" *Schmidtlien Electric, Inc. v. Greathouse*, 278 Kan. 810, 822, 104 P.3d 378 (2005). Using the natural and ordinary meanings of the words, we find that "section" and "portion" are less than "full." Therefore, replacing fence sections does not constitute full replacement of the fence, despite the extensive scope of the proposed work.

*Does the Proposed Work Impermissibly Change the Exterior Surface of the Fence?*

The other requirement for work to qualify as a repair is that it "does not in any manner change the use, location, height, size or exterior surface of the structure." Code § 5-103.82. The City argues that the proposed work is not a repair because it would change the exterior surface of 395 feet of the fence. The City relies on Section 5-136, which defines the side of the fence containing the posts, rails, supports, or other construction details as the "inferior side" of the fence. The City then argues that the side containing the pickets is its "exterior surface," as though "inferior" means "interior." Thus, it reasons, any change to the pickets is a change to an exterior surface. The district court rejected that argument, stating: "Applying this logic to a fence produces an absurd result, as a fence does not have an interior surface. Thus, if this regulation is strictly enforced, then there can never be a 'repair' of a fence."

We agree. Under the City's interpretation, any minor cosmetic change to any surface visible to others could constitute a change to an exterior surface, disqualifying it as a "repair" under Section 5-103.82, and requiring a building permit or variance. Such an interpretation is unreasonable. This section more likely refers to a change in exterior surface materials, *e.g.*, wood versus metal pickets or stucco versus brick siding. The City's attempt to set up a dichotomy between "inferior side" and "exterior surface" is thus unconvincing. Because the Layles propose to replace the fence sections with the same

9

materials, there is no change to the exterior surface—other than that the wood is not deteriorated.

Accordingly, we find that the Layles' proposed work constituted a repair of sections of their fence. Repairs, even on nonconforming structures, do not need a variance, per Section 5-128.C. The City Administrator thus had the authority to grant the Layles a building permit.

*Was the Board's Decision to Require Variances a Reasonable Decision?*

We now apply a reasonableness standard to review the Board's ultimate decision that the Layles would need variances to do the proposed work. Whether an action of a zoning body was reasonable is a question of law and not of fact. We do not give deference to the district court's conclusion on reasonableness because we rely on the same facts as did the district court. See *Golden v. City of Overland Park*, 224 Kan. 591, 596, 584 P.2d 130 (1978). Our review of the reasonableness of the Board's ultimate decision is limited to determining if:  "(a) the board of zoning appeals acted fraudulently, arbitrarily, or capriciously; (b) the board's decision is substantially supported by the evidence; and (c) the board's action was within the scope of its authority." *Hacker*, 48 Kan. App. 2d at 173.

Because the Board misconstrued the plain language of the zoning regulations, its decision that the Layles' proposed work constituted a full replacement of the fence is not substantially supported by the evidence. The evidence instead shows that their proposed work constituted a repair of the fence. Thus, the district court erred in affirming the Board's decision.

10

WE DO NOT REACH OTHER ISSUES RAISED BY THE LAYLES

The Layles make other arguments on appeal—that the variances they had previously received remained valid because variances run with the land and that the City violated their due process rights and caused an unconstitutional taking of their property. However, having determined that the proposed work was a repair and therefore did not require new variances, we need not resolve these issues. See *Wilson v. Sebelius*, 276 Kan. 87, 91, 72 P.3d 553 (2003) (Appellate courts generally avoid making unnecessary constitutional decisions where there is a valid alternate ground for decision.); *Zimmerman v. Board of Wabaunsee County Comm'rs*, 293 Kan. 332, 346, 264 P.3d 989 (2011) ("[I]f the governing body action is unreasonable, there cannot be a taking. The action is simply void. Only if the action is reasonable does a court proceed to address the takings issue.").

Reversed.